## ST. L., I. M. & S. RAILWAY CO. VS. MORRIS.

1. LICENSE TO OVERFLOW LANDS: *Not given by grant of right of way.*

   The grant of a right of way across one's lands to a railroad company is no license to it to overflow the grantor's lands by the unskillful construction of a levee on the right of way.

2. STATUTE OF LIMITATIONS: *In actions for overflowing lands by building levee.*

   The statute of limitations of three years applies to actions against a railroad company for overflowing one's land by the building of a levee, and commences as soon as the levee is completed.

3. DAMAGES: *Overflowing land by building levee.*

   A railroad company building a levee across a branch which overflows, and thereby causing a greater overflow of adjoining lands, is not relieved from damages therefor by making ditches and trestles that carry off the water as fast as the branch would when not overflowed.

4. RAILROAD COMPANY: *What injuries not liable for.*

   Railroad companies, acting within the limits of their franchises, and using due skill and care in the construction and operation of their roads, and having the right of way, are not liable as trespassers, nor for injuries to outside property which are the natural and unavoidable effect of the road.

5. DAMAGES: *Not diminished by benefits of road.*

   Damages for overflowing land by the construction of a railroad levee can not be diminished by the enhanced value given to the land in common with other lands in the vicinity by the presence of the road.

6. SAME: *Rule for, for overflowing land.*

   The rule for assessing damages for overflowing land by the construction of an embankment is, to take the actual value of the land at the completion of the work, supposing the consequences to be known, compare it with what the value would have been if the overflow had remained as before the construction of the embankment, and fix the damages at the difference.

APPEAL from *Jackson* Circuit Court.

Hon. WILLIAM BYERS, Circuit Judge.

*Winfield, Dodge & Johnson*, for appellant.

*Charles Minor, contra.*

St. L., I. M. & S. Railway Co. vs. Morris.

EAKIN, J.   Morris, the owner of a tract of land in Jackson county, for the consideration of a dollar gave a right of way across the same to the defendant railway company.

On the thirteenth of July, 1876, he brought this action at law against the company; alleging, in substance, that it had wrongfully erected an embankment upon the line of its road, and built a trestle, near the lands, and was continuing the same, whereby it caused the waters of Lye branch and White river to overflow them, and rise higher and remain longer upon them than before, with other injuries; that his lands were rendered unsalable and unfit for tillage. Prayer for damages.

The defendant answered, putting in issue the wrongful construction of the embankment and trestle, the overflow of the lands and all other injuries.   It pleaded also the statute of limitations of three years, and specially:

That the road was constructed by the Cairo and Fulton Railroad company, a corporation organized under our state laws, to which plaintiff had granted the right of way. That the embankment and trestle were necessary, and that they were constructed in a prudent and skillful manner, and that the injuries (if any) were unavoidable.   Also, that the lands in question were rendered more valuable by the construction of the railroad.

The plaintiff amended, to show that the defendant was the successor of the Cairo and Fulton railroad, and upon these pleadings the cause went to the jury.

There was a good deal of evidence *pro* and *con*, as to the effect upon the lands produced by the embankment and trestle.   The preponderance of it, as shown in this transcript, is to the effect that a solid road-bed embankment was built across a wet-weather stream which drained an area of several square miles, and that at a considerable dis-

tance from the natural crossing the company left an open trestle, and endeavored by a ditch to drain off the water through that. The effort seems to have been ineffectual. The proof justified the jury in finding that damage had resulted from want of due care and skill. Whether the court erred in instructions, remains to be considered.

The court, on motion of plaintiff, instructed the jury, in effect:

1.  That if defendant constructed the road-bed in the vicinity of the lands so as to obstruct the natural flow of water in Lye branch, and alter the natural drain, and thereby injured the lands by overflowing them, they should find for the plaintiff.

2.  In that case the measure of damages is the difference in the market value of the lands just before the construction of said road-bed, and just afterwards; in estimating which damages the jury should consider only the direct benefits to the plaintiff's lands from the construction of the road, not affecting other lands in the neighborhood.

3.  That notwithstanding the grant of the right of way, it was the duty of the company to construct its road-bed in a skillful and careful manner, or be liable for failure.

4.  That the statute of limitations is three years.

For the defendant, the court instructed:

That if more than three years had elapsed from the time of the injury to the bringing of the suit, it would be barred; and further:

That if the benefit to the land resulting from defendant's own acts in the construction of the road-bed, equaled or exceeded the damage, they should find for defendant.

It refused to instruct, on defendant's motion, as follows:

1.  That if the land was worth as much after the road was built as before; or,

St. L., I. M. & S. Railway Co. vs. Morris.

2. That the road-bed was constructed and completed across the branch, more than three years before the suit was brought; or,

3. That plaintiff granted the right of way over his lands, in consideration of one dollar and the benefits to be derived from the road; or,

4. That the damage resulted not from diverting or damming a running stream, but surface water; or,

5. That if defendant, after diverting the stream by the embankment, made artificial drains down the embankment and through the trestle, and back into the natural bed below, and that said ditches were sufficient to carry off the water as rapidly as the branch when not overflowed; or,

7. If the damages were not produced by the defendant's unlawful entry on the land, and taking the same for the use of the road-bed, but was a matter happening outside of the limits of its road-bed; they must, in either case, finding the facts, give a verdict for defendant.

The court also refused to instruct for the defendant: That the measure of damages was the difference between the damage done by the natural overflow of the land, and the natural character of the seasons, which would otherwise have resulted without the road being built, and the damage caused by it.

During the trial and after the evidence, defendant asked and was refused leave to plead the statute of limitation of two years, under the act of January 22, 1865, section 4. The refusal was proper, as the act does not apply to this case.

The jury returned a verdict in favor of plaintiff for $2,965.50, for which judgment was entered. Defendant moved for a new trial, which being refused, he excepted and appealed.

40

Exceptions to instructions given for plaintiff, and refused for defendant, as well as to the verdict on the evidence, were duly saved by motion for a new trial.

1. LICENSE TO OVER-FLOWLANDS Not given by grant of right of way.    The first instruction given for plaintiff is correct, taken in connection with the third. The grant of the right of way certainly was no license to the company to injure plaintiff by unskillful work. If it is to be considered at all it should, in conscience, have imposed upon the company an obligation to be tender of the property rights of the donor.

2. LIMITA-TIONS: To actions for over-flowing lands by levee.    The statute of limitations of three years applies to this case, as the court properly instructed, and it began to run as soon as the company had finished its work about the embankment, trestle and ditches. Until that was done, it could not be said that the embankment itself had caused any injury. If the open trestle and ditches had been properly located, and skillfully completed, there would have been no damage, nor cause of action. There was evidence to support the verdict on this point.

The consideration of plaintiff's instruction on the measure of damages, will be taken up in connection with that asked by defendant.

There was no evidence that the injury was caused by the obstruction of surface water. Lye branch was, by all the evidence, a stream with a defined bed, but sluggish. It is not necessary, in this case, to define the difference between the two cases.

3. DAMAGES Overflow-ing lands by building levee.    The fifth instruction was properly refused. It was not sufficient to construct the works so as to carry off the water as rapidly as the branch would " when not overflowed." Streams do overflow, and engineers should provide reasonably against that, also, by openings of sufficient

St. L., I. M. & S. Railway Co. vs. Morris.

capacity, or property holders would be left to the mercy of the elements.

The seventh instruction asked by defendant presupposes that a right of entry upon, and use of, land for road purposes, absolves the company from all liability for injury to other lands outside of the road-bed. This is a misapprehension of the true and rational doctrine.

Railroads exercise franchises granted by the state for the public good. The companies invest large sums for the use of these franchises, looking, however, only to the individual profit of the stockholders. Both interests are to be kept in view, and protected   If the companies act within the limits of their franchises, and use due skill and caution in the construction and operation of the roads, and acquire the right of way, they can not be made liable either as trespassers, or on account of detriment to outside property, which is the *natural and unavoidable* effect of the road. Some places are rendered less valuable, or endangered, by the mere vicinity of a railroad, constructed with the utmost care. It will bring less in market. This is the misfortune of the owner. But the public good requires that he shall submit to it, or railroads could not be built and run with private capital. But there is no case, whether with regard to lands inside or outside of the limits of the right of way, in which railroads or individuals may injure the property of others by the negligent and unskillful exercise of a right, without a corresponding liability. That would be shocking to justice, and violate a principle of common law which admits of no exception.

The really important question in this case regards the true measure of damages—the liability being once fixed. A few principles are well settled. The defendant can not diminish them by such appreciated value, given to the

4 RAILROAD COMPANY: What injuries not liable for.

5 DAMAGES: Not diminished by benefits of road.

lands, as is common to other lands in the vicinity, and which results from the conveniences of the road. Each citizen is entitled to that, and his full share of it. It is not matter of grace from the corporation, and it may not wantonly or carelessly defeat it.

It is held in a number of cases that the company may claim, in diminution, such appreciations of value as result to the land from the direct material operations of the company upon or near it, and which are special. For instance, an embankment may operate as a levee and reclaim lands from overflow; or ditches to relieve road-beds from water may operate as drains, and reclaim wet lands. The principles of justice upon which these decisions are based are not so obvious at first glance, as it seems a *non sequitur* that because the road *must* benefit the owner in some respects, it *may* injure him to a corresponding extent in others. There is nothing in this case to require a determination of this last point.

6. Rule for, for overflowing lands.

The instruction given for plaintiff is in the language of some of the cases. Generally it is correct to say that the measure of damages to any property, is the difference in its value, just before, and just after the injury. But it is plain that this can only be the true measure, where the damage itself is the sole element affecting the value. Here were railroad works some time in construction, during which there may have been great shrinkage of value in all sorts of property. If the works had been done, never so skillfully, there may, still, have been a great difference between the values of the land before the embankment was begun, and when work on the ditches ceased. The instruction was misleading.

That asked on this point by defendant was substantially correct, but calculated to embarrass and confuse a jury.

Properly understood, it has the support of a recent case in the queen's bench, quoted in a note to Mr. SEDGWICK's work on *Measure of Damages*, *p. 137*, *mar*. It is a rule difficult of application, and in this case would have required the jury first to fix the value of the land as entirely free of injurious water—then to estimate the *damage* done by nature—then the damage done by nature and the road together, and take the difference. The evidence did not afford data for these calculations.

The true rule, and the one in this case easily applicable by a jury of practical men, was to take the actual value of the land at the time the work was completed, supposing the consequences to be known, compare it with what the value would have been if the overflow had remained as formerly, and fix the damages at the difference. This allows all appreciation of land to complainant, and affords just compensation for want of care and skill.

For error in giving the second instruction of plaintiff, reverse the judgment, and remand the cause for a new trial, etc.