Sherlock v. The Louisville, New Albany and Chicago Railway Company.

No. 13,497.

## SHERLOCK v. THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY.

RAILROAD.—*Ejectment.*—*Statute of Limitations.*—*Adverse Possession.*—*Pleading.*—A complaint in ejectment, against a railroad company incorporated under the laws of this State, which shows that the plaintiff has been the owner of the land sought to be recovered for more than twenty-five years, during all of which time the defendant has held adverse possession, is bad on demurrer as showing a cause barred by the twenty years' statute of limitations, and not within any of the exceptions to the statute.

SAME.—*Trespass.*—*Adverse Possession Beginning With.*—The fact that the railroad company took possession of the land as a trespasser did not prevent the running of the statute of limitations, and open and adverse use for twenty years was sufficient to establish a right of way.

SAME.—*Damages.*—*When Action to Recover Barred.*—Title acquired by an adverse occupancy for twenty years will defeat any claim that the original owner may have had for damages resulting from such occupancy. *Cox v. Louisville, etc., R. R. Co.*, 48 Ind. 178, distinguished.

SAME. — *Private Nuisance.* — *Prescriptive Right to Maintain.* — A right to maintain a strictly private nuisance upon the land of another may be acquired by prescription, and the time necessary to perfect a prescriptive right in this State is twenty years.

SAME.—*Ejectment.*—*Injunction.*—*Estoppel.*—A land-owner who has stood by for thirty years, and, without objection, allowed a railroad company to expend its money in the construction and repair of its road upon his land, is estopped to maintain either ejectment or injunction.

SAME.—*Damages.*—*Successive Actions.*—Where land is taken by a railroad company, all damages therefor, and all that naturally and proximately result from the proper construction and operation of the road, must be recovered in one action, as successive actions can not be maintained.

SAME.—*Subsequent Purchaser.*—*Right of Action.*—Such damages accrue to the person owning the land at the time of the construction of the road; they do not pass to a subsequent purchaser, except by a special stipulation, and to entitle him to maintain an action therefor he must procure an assignment of the claim.

SAME.—*Defective Bridge.*—*Overflows Caused by.*—*Accruing of Cause of Action.*—A subsequent grantee of land may maintain an action for damages resulting, during a freshet, from overflowing backwater caused by the negligent construction of a railroad bridge, prior to his purchase, over a natural watercourse flowing through his land, the cause of action for

Sherlock v. The Louisville, New Albany and Chicago Railway Company.

such damages accruing at the time of the overflow, and not at the time the bridge was constructed.

SAME.—*Prescriptive Right to Overflow Adjoining Lands.*—To constitute a prescriptive right in favor of a railroad company to overflow the lands of another, by maintaining an insufficient and negligently constructed bridge upon its right of way, it is not enough to show that the bridge has been maintained in the same manner for twenty years, but it must be shown that there has been a lapse of twenty years since such an invasion of the adjoining proprietor's rights as resulted in the accruing to him of a cause of action therefor.

SAME.—*Acquiescence.*—*Estoppel.*—The facts that the plaintiff and his predecessors in the title to the land had knowledge of the erection of the bridge and the manner of its construction, and made no objections, do not, in the absence of an averment that the plaintiff knew that the bridge would flood his land and that he acquiesced therein, create an estoppel against him.

SAME.—*Right to Remove Fences Encroaching Upon Right of Way.*—A railroad company has the right to remove, without liability for damages, fences constructed upon its right of way, lawfully acquired, by an adjoining land-owner.

From the Martin Circuit Court.

*W. R. Gardiner, J. W. Buskirk* and *H. C. Duncan,* for appellant.

*G. W. Friedley* and *G. W. Easley,* for appellee.

ZOLLARS, J.—A demurrer was sustained to the second and sixth paragraphs of appellant's complaint. That ruling is assigned as one of the errors for which the judgment should be reversed.

The substance of the second paragraph is, that appellant has owned a described tract of land for thirty years; that, in 1853, the New Albany and Salem Railroad Company, duly incorporated under the laws of this State, without having had damages assessed or tendered to appellant or his predecessor in the ownership of the land, and without his consent, or the consent of such predecessor, entered upon the land and constructed its road thereon; that said company and its successor, the appellee herein, also a corporation under the laws of this State, have ever since unlawfully

continued to use the road so constructed, in the operation and moving of trains, and threaten to continue to so use the same; that said appropriation and use of the land thus occupied by the road have damaged the land and appellant in the sum of $2,000. The prayer was for $2,000 and a perpetual injunction against the further use of the road across appellant's land, in the running and operation of appellee's trains thereon, etc.

The substance of the sixth paragraph is, that appellant is the owner and entitled to the possession of a described strip of land thirty feet wide; that appellee, a railway corporation, incorporated under the laws of this State, unlawfully and without right, twenty-five years before the commencement of this action, went into the possession of the strip of land, and has continuously, without appellant's consent, held the possession and use of it, and, without right, kept him out of the possession of the same, to his damage in the sum of $2,000. The prayer was for the possession of the land and for $1,000 damages.

It will be observed that the sixth paragraph is in ejectment for the possession of the land occupied by the railway company for its road-bed. For that purpose the paragraph is clearly bad. It is averred in that paragraph, as will be seen, that the railway company entered and constructed its railway upon the strip of land twenty-five years before the bringing of this action, in 1884. It is also averred that the railway company took possession of and held the strip of land without the consent of appellant, and has ever since excluded him therefrom. It thus appears that the company had held the possession of the strip of land adversely to appellant for twenty-five years before he took any steps to recover it by action, and thus it appears that appellant's right to eject the company from the land is barred by the twenty years' statute of limitations. The rule is settled in this State, that a demurrer will not be sustained to a complaint on the ground that it shows a cause barred by the statute of limita-

tions, unless it also appears that the cause does not come within any of the exceptions to the statute, where there are such exceptions. *Epperson* v. *Hostetter*, 95 Ind. 583, and cases there cited; *Lehman* v. *Scott*, 113 Ind. 76.

If there are no exceptions to the statute, or if it appear from the complaint that the cause does not come within the exceptions, where there are any, a demurrer will be sustained if it appear from the complaint that the statutory period of limitation has expired, and the case is otherwise within the statute. There are exceptions to the statute of limitations applicable here. One of them is, that any person being under legal disabilities when the cause of action accrues, may bring his action within two years after the disability is removed. R. S. 1881, section 296. Infants are persons under legal disabilities within the terms of the above section. R. S. 1881, section 1285; *Lehman* v. *Scott, supra.*

It clearly enough appears here that appellant's cause of action, as made by the sixth paragraph of his complaint, does not fall within this exception. It is shown by the averments in that paragraph, that he had been the owner of the land for at least twenty-five years, and that during that time it had been occupied by the railway company. If he was but one day old at the time the company entered upon and took possession of the land, he attained the age of twenty-one years four years before this action was commenced, and thus it appears that the railway company held adverse possession of the strip of land for more than twenty years, and that appellant did not commence his action within two years after his disability was removed.

It clearly enough appears, also, that the appellee was not, during any of the time during which it held the strip of land, a non-resident of the State or absent on public business, within the terms of section 297, R. S. 1881, which constitute other exceptions to the statute of limitations.

It is averred that the railroad company was incorporated under the laws of this State, and that it continuously held

the possession of the strip of land, and maintained and operated its road thereon. And thus it appears that the company was a resident of this State, and was continuously present, operating its road.

That the company may have taken possession of the strip of land in the first place as a trespasser did not prevent the running of the statute of limitations.

Adverse possession is often wrongful, and may often commence by a trespass, but that does not prevent the running of the statute of limitations. That statute is a statute of repose, and may settle the title in an original wrong-doer.

The holding in the case of *Sibley* v. *Ellis*, 11 Gray, 417, is correctly stated in the syllabus, as follows : "Open and adverse use for twenty years will establish a right of way, although the user began in a trespass."

The conclusion above reached also disposes of the claim for damages as made in the paragraph under consideration. In an analogous case the Supreme Court of Massachusetts said : "The court are of opinion, that where a mill-owner and his predecessors have in fact enjoyed and exercised the right of keeping up his dam and flowing the land of another, for a period of twenty years, without payment of damages, and without any demand or claim of damages, or any assertion of the right to damages, it is evidence of a right to flow without payment of damages, and will be a bar to such claim. It is very clear, that to raise a dam on one's own land, by which the water is set back on another's, without grant from the latter, would be a tort, for which case would lie. If such a dam is continued twenty years, without action, complaint or protest, on the part of the land-owner, it is evidence of a right; and as such right may be and often is acquired by grant, it is taken to be presumptive evidence of a grant, and may be so pleaded." *Williams* v. *Nelson*, 23 Pick. 141. See, also, *Roots* v. *Beck*, 109 Ind. 472, and cases there cited.

When the presumption of a grant is thus raised by twenty years' occupancy, it can not be said that damages may be

awarded against an occupant for having done that which he might legally do as the owner of the land. When time has made the occupancy right and legal, it has swept away all claim for damages by reason of that occupancy. A person can not be held liable for the occupancy of land which he had a right to occupy as against all others.

The case of Cox v. Louisville, etc., R. R. Co., 48 Ind. 178, is relied upon by appellant in support of his contention that the twenty years' statute of limitations will not defeat a recovery for damages resulting from the alleged unlawful detention of the land by the railway company.

It is argued that that case lends support to the contention that the railroad as constructed and maintained, and operated by the moving of trains over it, was, and is, a continuing nuisance, and that each day's continuance is a new nuisance, for which damages may be recovered.

With reference to that case it should be observed, in the first place, that it arose out of an unauthorized construction of the railway upon a public street; and, in the second place, that it does not appear in the case that the street, or any part of it, had been adversely, or otherwise, occupied by the railway company for a period of twenty years. In those particulars the case is distinguishable from that before us. It should be observed, also, that the section quoted in the opinion in that case from Angell on Limitations is authority in support of the proposition, that an adverse occupancy for a period of twenty years will defeat a claim for damages resulting from such occupancy, as made here. The section thus quoted is in harmony with the Massachusetts case above, and with the rule laid down by Mr. Wood in his work on Limitations of Actions, at page 376, section 181, as follows: " While, as we have stated, each continuance of a nuisance is treated as a new nuisance, and furnishes a new ground of action which affords a good ground of recovery, although the statute may have run upon former injuries from the same nuisance, yet this proposition only holds good when the ac-

tion is brought before the person erecting or maintaining the nuisance has acquired a prescriptive right to do so, by the lapse of such a period as bars an entry upon lands adversely held by another, that being the period universally adopted in this country for the acquisition of prescriptive rights," etc.

That a right to maintain a public nuisance can not be acquired by prescription, and that each day's continuance of such a nuisance is a new nuisance for which a public prosecution will lie, notwithstanding the nuisance may have been maintained for more than twenty years, is well settled. To that extent, and no further, go the authorities cited by appellant. See *State* v. *Phipps*, 4 Ind. 515; see, also, Wood Law of Nuisances (2d ed.), pp. 769, 770; *Pettis* v. *Johnson*, 56 Ind. 139.

It may be observed, however, that there are cases where the State may be estopped from maintaining such a prosecution. See *Hamilton* v. *State*, 106 Ind. 361.

The above authorities show, also, that a right to maintain what is strictly a private nuisance may be acquired by prescription, and that the time necessary to perfect a prescriptive right is the period which bars an entry upon lands adversely held by another, which, in most of the States, is twenty years. In that regard, those authorities are fully supported by the law writers and the adjudicated cases. See Wood Law of Nuisances, p. 763, *et seq.*, sec. 704, *et seq.*, and cases there cited; 1 Hilliard Torts (4th ed.), p. 653, and cases there cited; see, also, *Snowden* v. *Wilas*, 19 Ind. 10 (81 Am. Dec. 370); *Mitchell* v. *Parks*, 26 Ind. 354; *Postlethwaite* v. *Payne*, 8 Ind. 104.

If we regarded the case of *Cox* v. *Louisville, etc., R. R. Co.*, *supra*, as really in conflict to any extent with our conclusion here, we should feel constrained to overrule it to that extent.

If, then, it may be said here, that the road, as constructed and operated over appellant's land without his consent and without compensation first paid, was, in any sense, a nuisance, it was nothing more than a private nuisance, and it is very

clear that there can be no recovery for damages resulting from such construction and operation, because more than twenty years of occupancy and user have made that construction and operation lawful.

Our conclusion is, that the sixth paragraph of the complaint was not good, and that the demurrer thereto was properly sustained.

While the second paragraph is not, in a strict sense, for the possession of the land and the ejectment of the railway company therefrom, practically it amounts to the same thing. For all practical purposes the company might as well be ejected from the land as to be perpetually enjoined from operating its trains over the road. It is shown by the averments in the paragraph that the road was constructed upon and across the land in 1853, thirty-one years before the action was commenced, in 1884. If it be said that the construction and operation of the road, because without the consent of appellant and his predecessor in the ownership of the land, was thus constructed and operated against their will, then we shall have a case of adverse possession for more than twenty years, and all that has been said in relation to the sixth paragraph of the complaint is applicable here, and the second paragraph must be held bad.

While the construction of the road upon the land is alleged to have been without the consent of the owners of it, there is no averment that they at any time objected, or took any steps to prevent such construction. For more than thirty years they stood by and allowed the railway company to expend its money in the construction and repair of the road. They ought now to be held as acquiescing in the construction and operation of the road. It is too late now to eject the company from the land, or to invoke the aid of a court of equity to enjoin it from operating the road, which would be, practically, the same thing. It was intimated in the case of *Cox* v. *Louisville, etc., R. R. Co., supra*, relied upon by appellant, that the land-owner might at any time

enjoin the use of the road by the railway company, had the company claimed the right to continue the use of it. So far as that case holds, or impliedly holds, such a doctrine, it has been distinguished, and impliedly disapproved, in the later cases, by the statements that no question was there made upon the delay in bringing the action, and by the holdings that, after a long delay, courts of equity will not interfere by enjoining the operation of the road by the company. *City of Logansport* v. *Uhl*, 99 Ind. 531 (50 Am. R. 109).

We can not do better here than to repeat what was said in the recent case of *Midland R. W. Co.* v. *Smith*, 113 Ind. 233, viz.: "As has been seen, relief by injunction will only be granted when application therefor is seasonably made. A land-owner who stands by and acquiesces until a railroad corporation has expended its money and constructed its track across his land, so that the track at that point becomes a part of its line, will not thereafter be entitled to invoke the aid of a court of equity in arresting an enterprise in which the public, as well as the railroad company, has an interest. Upon considerations of public policy, as well as upon recognized principles of justice, courts of equity will refuse to interfere after a railroad corporation has entered upon land with the consent or by the license of the owner, and has expended money in the construction of its road upon the strength of such license or consent, or where the land-owner has acquiesced in the use of his land by the railroad company until the public interest or convenience becomes involved. *Campbell* v. *Indianapolis, etc., R. R. Co.*, 110 Ind. 490, and cases cited; *Chicago, etc., R. W. Co.* v. *Jones*, 103 Ind. 386; *Buchanan* v. *Logansport, etc., R. W. Co.*, 71 Ind. 265; 2 Rorer Railroads, 741, 750, 751; 2 Wood Railway Law, 794."

The holding in the case of *Indiana, etc., R. W. Co.* v. *Allen*, 113 Ind. 581, is in substance as follows: Where a railroad company enters upon land without right, and, with the knowledge and acquiescence of the owner, constructs a rail-

road thereon, and operates its railroad in the public service until public rights have been acquired, this will, on the ground of public policy, preclude him from severing the line of railroad by a possessory action. See, also, *Cincinnati, etc., R. R. Co.* v. *Clifford*, 113 Ind. 460; *Evansville, etc., R. R. Co.* v. *Nye*, 113 Ind. 223; *McAulay* v. *Western Vermont R. R. Co.*, 33 Vt. 311.

The paragraph under consideration does not make a case which would justify the court in enjoining the operation of the road by the company. Neither does it make a case for damages. It is clearly shown that the road was constructed upon the land before appellant became the owner of it. It is settled in this State, that, where land is taken by a railway company, all damages for such taking must be recovered in one action, and that the owner of the land can not maintain successive actions therefor. In such action, all injuries that may naturally and proximately result from the construction and operation of the railway may be recovered. Such damages accrue to, and must be recovered by, the person who owned the land at the time the road was constructed. The claim for such damages is a chose in action which does not pass to the grantee of such owner by deed or otherwise, unless by a special stipulation. In order to entitle a grantee to maintain an action for such damages, he must first procure an assignment of such claim. *Indiana, etc., R. W. Co.* v. *Allen*, 113 Ind. 308, and cases there cited.

Before proceeding to a consideration of the second paragraph of appellee's answer, the demurrer to which was overruled, it is necessary to notice, briefly, the third, fourth, fifth and eighth paragraphs of the complaint to which it is addressed. The substance of the third paragraph is, that, in 1883, appellant was the owner of a described tract of land over which appellee owned and operated its railway; that, at that time, the appellee, without right, wrongfully and unlawfully entered upon his said land, and, without right, tore down and rendered worthless plank and rail fences of the

value of $200; that the fences were necessary, at the places where they had been constructed, for the proper cultivation of his land, and that appellant threatens to tear down the fences as often as they may be rebuilt upon the line from which it removed them. Prayer for judgment for damages, and for an injunction to prevent appellee from interfering with the construction and maintenance of the fences.

The substance of the fourth paragraph is, that appellant is the owner and entitled to the possession of a strip of land thirty feet wide, which is particularly described, and that appellee has unlawfully kept him out of the possession of it for ten years, to his damage. Prayer for possession and damages.

The fifth paragraph is very much the same as the third.

The substance of the eighth paragraph is, that for twenty years past appellant has been the owner of a described tract of land; that, in 1853, appellee, then a railway corporation under the laws of this State, by the consent of the owner of said land, appellant's predecessor in the ownership of the land, constructed its railway upon and across the land, and continued to use the same until the 1st day of July, 1882, with the knowledge and consent of appellant and his said predecessor in ownership, at which time appellant objected to any further use of the road upon said land, and demanded the possession of the land occupied by the road; that the appellee refused to yield the possession; that it has never had compensation assessed or tendered to him. Prayer for the possession of the land occupied by appellee's road and the ejectment of appellee therefrom.

If the second paragraph of the answer were addressed to the above eighth paragraph of the complaint alone, there could be no question of its sufficiency, because, whether good or bad, it would be sufficient for that paragraph, which is clearly bad. It shows that for more than twenty years appellant and his grantor acquiesced in the occupation of the land by the railway company. After such an acquiescence

it is too late now to ask for an ejectment of the railway company from the land.

The answer, however, as we have seen, is addressed to other paragraphs, which appear to be good. It is necessary, therefore, to examine the answer.

It must be regarded as intended to meet those paragraphs of the complaint which charge appellee with the unlawful removal of the fences and the unlawful possession of the strip of land. The substance of the answer is, that the New Albany and Salem Railroad Company was incorporated under an act entitled an act to provide for the continuance of the construction of all or any part of the public works of the State by private companies, approved on the 28th day of January, 1842 (Acts 1842, p. 1), and was so organized and incorporated for the purpose of completing as a railroad a certain proposed macadamized highway running from New Albany to Salem, which had been partially constructed under the improvement act of 1836; that by said act of 1842 said railroad company was empowered to so build said railroad and extend the same to the north part of the State, and was given all the franchises and powers of the State in that behalf; that in 1848 an act was passed and approved (Local Laws, 1848, p. 456), in which it was provided that said railroad company should enjoy all the powers conferred upon the State by the act to provide a general system of internal improvement, approved January 27th, 1836 (Acts 1836, p. 6), and said act of 1842, *supra;* that by an act of January 30th, 1849, it was further enacted that said railroad company, by its board of directors, should, in the assessment of damages in relation to all necessary rights of way, possess the same powers and perform the same duties that were possessed and performed by the board of internal improvement, as prescribed in the 16th and 17th sections of said act of 1836; that, being so organized, said company constructed its railroad from New Albany to Salem, and, having caused the

proper surveys to be made in 1853, extended its line to Michigan City, and appropriated land therefor; that, at the time the railroad was constructed across the land now owned by appellant and described in the complaint, said land was owned by one Chambers, who had full knowledge of the acts of said company in taking possession of the land and constructing its road thereon, and made no objection nor claim for damages; that appellee is the owner of the road so constructed by the New Albany and Salem Railroad Company, and by itself, and its said predecessor in title, has been in the full possession thereof, operating the same, since 1853 until the present time; that during all of that time no owner of the land ever objected or claimed damages until this action was commenced; that in appropriating a right of way through the land now owned by appellant, said New Albany and Salem Railroad Company took no more than was necessary for the construction and operation of its road, and that the amount so taken did not exceed sixty feet, which strip so taken and appropriated is the land claimed in appellant's complaint; that in 1883 appellant entered upon appellee's road-bed, and within the sixty feet so appropriated through his land, and erected fences thereon so close to the track of the road as to interfere with the proper repair and management thereof, and thus forcibly asserted a right to said right of way theretofore appropriated as aforesaid; that appellee, by its servants and agents, peaceably removed the fences from its right of way, using no more force than was necessary, which is the grievance complained of in the third and fifth paragraphs of the complaint; and that the right of way, thus appropriated is the land which appellant asks the possession of in the fourth and eighth paragraphs of his complaint.

It will not be necessary for us to here go into an extended examination of the several acts under which the New Albany and Salem Railroad Company was incorporated, and under which it had authority to appropriate land for its right of

way. The board of internal improvement had authority to enter upon and appropriate any land necessary for the prosecution and completion of the improvements contemplated in the act of 1836. Acts 1836, p. 13, section 16. The New Albany and Salem Railroad Company was given the same authority, and " to enter upon and take possession of any lands * * which may be necessary for the construction of any such work, and to make the same available." See *Peck* v. *Louisville, etc., R. W. Co*, 101 Ind. 366.

The averments of the answer, in some respects, are not as formal and specific as they might have been made, but we think that, as against the demurrer, it is sufficiently shown that a strip of land sixty feet wide through the land now owned by appellant was appropriated, and that a strip that wide was necessary for the completion of the road, and to make it available ; and, further, that appellant constructed his fences upon the strip of land thus appropriated and used by the railway company for about thirty years. Our conclusion, therefore, must be, that appellant can not recover from the railway company the land thus occupied, and can not build fences upon it; and, further, that the railway company had a right to remove the fences, as it did, and is not liable therefor ; and, finally, that the demurrer to the answer was properly overruled.

It is further insisted, on behalf of appellant, that the court below erred in overruling a demurrer to the sixth paragraph of appellee's answer. That paragraph is addressed to the first paragraph of the complaint, in which it is charged, in substance, that appellant has been the owner of certain described lands since 1862, across which appellee, in 1883, owned and operated its railroad ; that, prior to that date, appellee had constructed a bridge on the line of its road over a stream of water flowing through his land ; that the bridge was negligently constructed, and, up to 1883, negligently maintained so low and short, and with such trestles under it, that the water of the stream which collected above it did

not, and could not, pass under it; that by reason of such obstruction, in 1883, the water was diverted from its channel and backed up and set back upon appellant's lands and destroyed his fences and growing crops.

The substance of the sixth answer is, that the bridge was first built in 1853, where it now is, and has since remained, by appellee's predecessor in the title to the railroad, the New Albany and Salem Railroad Company, and has been maintained in its present condition ever since; that it was so built, and has all the time been maintained, with the full knowledge of and without objection from appellant or his predecessor in the title to the land; that, with full knowledge on their part of the manner in which the bridge was constructed and has been maintained, and of the liability of the overflow of the land by the stream, neither of them, at any time, complained of or made any objection to the bridge as constructed and maintained; and that appellant "has so acquiesced and consented with full knowledge that defendant (appellee) has expended large sums of money on said bridge and said track, and other bridges leading thereto. Wherefore defendant says that he (appellant) is estopped from asserting any claim for damages by reason of the premises."

After a careful consideration we are of the opinion that the first paragraph of the complaint makes a case for damages, and that the case as thus made is not met and overthrown by the above paragraph of answer.

That a railway company will be liable for the overflow of adjoining lands which results from the negligent construction of a bridge over a natural watercourse, is well settled.  1 Redfield Railways (6th ed.), p. 341, et seq.

Whatever damages resulted, or might reasonably result, from the appropriation of the land and the proper construction of the road thereon, accrued in favor of Chambers, who owned the land at the time that that portion of it occupied by the road was appropriated. The right to recover those damages did not pass to appellant. When we have said this

much we think we have gone as far as we should in denying a right of recovery to a subsequent owner of the land.

That the bridge would be negligently constructed, or, if so constructed, that it would at any time cause injury and damage by causing the stream to overflow the lands outside of the right of way, could not have been sufficiently known, until such an overflow occurred to authorize the assessment of damages in advance. And, assuming that such an overflow might be occasioned by the bridge, it would be impossible, in advance of such overflow, to make even an approximately correct estimate of the damages that might result. When the injury did occur by reason of such overflow, it was not the probable and proximate result of the construction of the road, but the result of an act of negligence, in connection with more than a usual amount of water in the stream. See *St. Louis, etc., R. W. Co.* v. *Morris,* 35 Ark. 622.

While the complaint is not as definite as it ought to be, it is apparent that the overflow in 1883 was at a time of high water, and would not have occurred but for such high water. Because the overflow here complained of did not occur while Chambers owned the land, because such an overflow was not the result of the proper construction of the road, and because it could not have been so known that such an overflow would result from the negligent construction of the bridge that damages could have been assessed in advance, it can not be said that the damages here complained of did, or could, accrue in favor of Chambers. See Mills Eminent Domain, section 217, and cases there cited ; Pierce Railroads, p. 179, and cases there cited ; *Southside R. R. Co.* v. *Daniel,* 20 Grat. 344.

It has been said that a cause of action may be said to be the right of the plaintiff, and the obligation, duty or wrong of the defendant, and that these combined constitute the cause of action. *Veeder* v. *Baker,* 83 N. Y. 156 (160) ; *Baker* v. *State, ex rel.,* 109 Ind. 47 (61).

Accepting that definition as correct, it may be said here

that the right of the plaintiff was to have his land free from the overflow, and to recover the damages resulting therefrom; and that the wrong of the railway company was the negligent construction and maintenance of the bridge. These could not combine until the overflow occurred, and hence the cause of action accrued in favor of appellant, and not in favor of his grantor.

Mr. Redfield, in his work on Railways, at page 595, vol. 1 (6th ed.), says: " The general rule, in regard to the time of the accruing of the action is, that, when the act or omission causes direct and immediate injury, the action accrues from the time of doing the act, but where the act is injurious only from its consequences, as by undermining a house or wall, or causing water to flow back at certain seasons of high tide or high water, the cause of action accrues only from the consequential injury. In the case of *Backhouse* v. *Bonomi* (9 H. L. Cas. 503), it was held that no cause of action accrued from defendant's excavation in his own land, until it caused damage to plaintiff's."

The case of *Moison* v. *Great Western R. W. Co.*, 14 Upper Canada Q. B. 109, arose out of the imperfect and negligent construction of a bridge over a stream crossed by the railroad, and the consequent flooding of the lands of the plaintiff. It was contended in that case that the plaintiff, who claimed damages by reason of the overflow of his land, could not recover, for the reason that the injury proved resulted from the construction of the defendants' works, and that the plaintiff's only remedy was under the arbitration clause of the charter ; and, further, that, as it did result from the construction of the defendants' works, and the bridge had been constructed upwards of two years before the commencement of the suit, the plaintiff could not recover. That contention was based upon a statute which provided that all suits "for indemnity for any damage or injury sustained by any person or persons *by reason of the said railway*, shall be instituted within six calendar months next after the time of

## MAY TERM, 1888. 39

Sherlock *v.* The Louisville, New Albany and Chicago Railway Company.

such supposed damage sustained, or if there shall be a continuation of damage, then within six calendar months next after the doing or committing such damage shall cease, and not afterwards."

The contention on the part of counsel for the railway company presented the question, whether the cause of action accrued at the time the bridge was constructed, or at the time the injury was caused by the overflow. If at the former time, the action was brought too late, under the statute.

Upon the question thus presented, ROBINSON, C. J., said: "As regards the limitation of time for bringing the action, we think that the plaintiff was properly entitled to succeed, both on the second and fourth pleas, for that the cause of action first arose when the damage was suffered, there being no complete cause of action till the damage was sustained. The defendants were guilty of no illegal act that could have been complained of as a trespass, and till it proved to be injurious there was no right to sue."

BURNS, J., said: "No matter how unskilfully the works were constructed, if they answered the purposes of the defendants' railway, no one could complain of that; but it is when those unskilful works occasion injury to others in places where, perhaps, it was supposed they could not exert or have an influence, that a cause of action arises to such persons. The plaintiff complains that his land was over-flowed by means of the defendants' works, and as proved that most certainly did happen within six months next before the bringing of the action."

In the case of *Vanhorn* v. *Grand Trunk R. W. Co.*, 18 Upper Canada Q. B. 356, the same question was involved, and ROBINSON, C. J., again said: "I think no objection lies in this case to the action which is brought, not for any thing being done that was necessarily done in carrying on the work, but for an alleged injury not foreseen, and first experienced long after the railway was completed, and an injury attributed solely to the unskilful and negligent manner of

constructing a culvert. As to the action not being brought in time, I am of opinion that the objection is not tenable, for there was no right of action till the plaintiff's land had received injury from the freshet," etc.

Burns, J., said: "Upon the first point made for nonsuit, the question is, when did the plaintiff's cause of action arise. Was it when the railway was first constructed, or at the time the plaintiff's land was flooded? The words of the 20th section of 14 and 15 Vic., ch. 51, are that 'all suits for indemnity for any damage or injury sustained by reason of the railway, shall be instituted within six calendar months next after the time of such supposed damage sustained.' It was not possible for the plaintiff to know whether the defendants' works would or would not do him an injury until those works were tested, and no test could be applied until it was done by nature. * * * If this plaintiff had brought an action before his land was flooded, upon the idea that it might be so at some future period, surely the answer would have been that he was premature, for no one could know that he would ever sustain any injury. When the land was overflowed then his case came within the rule of *damnum et injuria*, and then his cause of action arose." See, also, *Dickson* v. *Chicago, etc., R. R. Co.*, 71 Mo. 575.

Our conclusion upon this feature of the case is, that the sixth paragraph of the answer can not be held good upon the theory that it shows that the right of action set up in the first paragraph of the complaint accrued, or could have accrued, in favor of Chambers, and did not accrue in favor of appellant.

It results from what we have said, also, that appellant's right of action, as set up in the first paragraph of the complaint, was not barred by any statute of limitations, nor affected by the lapse of time simply, unless it may be said that the railway company had, prior to the overflow of 1883, acquired such a prescriptive right to maintain the bridge as it was at that time as to exonerate it from all liability for

damages resulting from such overflows; or, in other words, had a prescriptive right to overflow appellant's lands. Had the company acquired such a right? This inquiry may be considered in connection with that portion of the eighth instruction, in which the jury were instructed that they could not award damages to appellant for the injury occasioned by the overflow of his land outside of the right of way, if they should find that the bridge had been constructed and maintained continuously, uninterruptedly and adversely for twenty years or more.

That instruction was predicated, doubtless, upon the theory that if the bridge had been maintained in the manner stated for twenty years, the railway company had thereby acquired a prescriptive right to maintain it, and, therefore, was not liable for the damages resulting from the overflow caused by it, although it may have been negligently constructed and maintained; in other words, that the railway company had thus acquired a prescriptive right to overflow appellant's land by maintaining an insufficient and negligently constructed bridge upon its right of way.

There are important elements lacking here which are essential to a prescriptive right in the railway company to flood appellant's lands.

The whole case is upon the theory that all of the injury complained of, and, so far as shown, all that has resulted to appellant's lands by reason of the defective bridge, was caused by the overflow of 1883. That overflow was the result of a freshet in the stream, in connection with the insufficient bridge.

Assuming that the railway company owned the right of way through appellant's lands, as is assumed in the answer and instruction, there is no claim in either, nor, as we understand, in the evidence, that in times of ordinary water the bridge caused any overflow of appellant's lands, or in any way operated as an invasion of any of his rights.

So long as no injury resulted to appellant, it was entirely

immaterial to him in what manner the bridge was maintained by the railway company upon its own land. The bridge being upon its land, his rights could in no way be invaded by its maintenance until he, in some way, suffered an injury by such maintenance. Until then, it was neither harmful nor a matter of inconvenience even to him.

Until a person's rights are in some way invaded, they can not be destroyed or transferred to another by prescription.

Time—in this State twenty years—is an essential element in the establishment of a prescriptive right, and, in a case like this, begins to run only from the date at which a cause of action accrues in favor of the party against whom the right is asserted.

As we have seen, in this case no cause of action accrued to appellant, by reason of the negligent construction of the bridge, until the overflow of his land in 1883, much less than twenty years ago.

In speaking of the right by prescription to exercise a noxious trade, Mr. Wood, in his work on Limitation of Actions, at page 377, section 182, says: "But, in order to establish the right as against any party complaining, the burden is imposed upon the defendant, who sets up the right as a defence, of proving that for the period of twenty years he has sent over the premises in question from his works an atmosphere equally as polluted and offensive as that complained of. Proof that he has polluted the air is not enough: he must show that for the requisite period he has sent over the land an atmosphere so impure and polluted as to operate as an actual invasion of the rights of those owning the premises affected thereby, and in such a manner that the owner of the premises might have maintained an action therefor. Less than that is insufficient. He must also show that his user at the time when the action is brought is not substantially in excess of that which he has exercised during the period requisite to acquire the right. * * * In order to establish a right by prescription, the acts by which it is

sought to establish it must operate as an invasion of the particular right which it is sought to quiet, to such an extent that during the whole period of use the party whose estate is sought to be charged with the servitude could have maintained an action therefor."

Mr. Wood, in his work on the Law of Nuisances, at section 708, says: " There is a distinction between a prescriptive right to do some act upon one's own premises that operates injuriously to another, and a right to do some act upon another's premises. In the latter case, each act of user, before the user ripens into a right, is a trespass, for which an action may be maintained at any time, while in the former no action can be maintained until some *right* has been invaded. In the one case there is an actual invasion of the property itself, while in the other there is a mere invasion of some right. * * * The rule is, * * * that to constitute an adverse user requisite to sustain the right, it must be shown that the user had actually invaded the rights of the person against whom the claim is made, in reference to the particular matter which is the subject of complaint, and that the user, during the entire statutory period, and the invasion of the right, have produced an injury equal to, and of the character complained of, and of such a character and to such an extent that at any time during that period an action might have been maintained therefor."

Applying to the case in hand the above rules of law laid down by the authors named, which are abundantly established by the cases cited by them, and by many others that might be cited, it must be held that it is not shown by the sixth answer that the railway company had a prescriptive right to flood appellant's lands, for the reason, among others, that it is not shown that, by the erection and maintenance of the bridge, it in any way invaded any of his rights prior to the overflow of 1883, nor that any cause of action accrued to him on account of such erection and maintenance of the bridge prior to that date. Neither is it shown by the evi-

Sherlock *v.* The Louisville, New Albany and Chicago Railway Company.

dence that there was any such invasion of appellant's rights, or that such cause of action accrued to him prior to the overflow of 1883. For these reasons the sixth paragraph of the answer is bad, and the eighth instruction is erroneous.

It is averred in that paragraph of the answer, that appellant and his predecessors in the title to the land had knowledge of the construction of the bridge, and of the manner of its construction, and made no objections. Those averments, when admitted as true, do not make an estoppel against appellant. It is not averred that he knew that the bridge would flood his land, nor that he acquiesced in such flooding. See *Miller* v. *Stowman*, 26 Ind. 143 (149).

The fifth paragraph of the answer is also bad, in that it purports to answer the whole complaint and answers but a portion of it.

Whether or not the flood of 1883, which, in connection with the bridge, caused the overflow of appellant's land, was an extraordinary flood, and such as the railway company was not bound to anticipate and provide against in the erection and maintenance of the bridge, are questions which we need not, and do not, now decide.

There are a number of other questions discussed by appellant's counsel, but we do not think that it would be profitable to extend this already lengthy opinion to decide them upon this appeal.

Judgment reversed, at appellee's costs, with instructions to the court below to sustain appellant's motion for a new trial, and to sustain his demurrer to the fifth and sixth paragraphs of appellee's answer.

Filed May 28, 1888.