ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* ANDERSON.

Opinion delivered May 2, 1896.

RAILROAD—OBSTRUCTING DRAINAGE.—A railroad company acquiring for a right of way land in which a ditch has been made for drainage by the owner of the land, or by one who has acquired the right of drainage thereby as an easement, has no right to fill up the ditch or obstruct the drainage.

DAMAGE—OBSTRUCTING DRAIN.—The damage for overflowing land by obstructing a ditch is measured by the difference between the value of the land as it would have been with the ditch open and the value of it with the ditch closed.

LIMITATION OF ACTION—OBSTRUCTING DRAIN.—The statute of limitations begins to run against an action for damages caused by filling up a ditch by a permanent obstruction from the time it is so filled up.

Appeal from Jackson Circuit Court.

SAMUEL PEETE, Special Judge.

On June 19, 1894, Ida F. Anderson and others filed their suit against the St. Louis, Iron Mountain & Southern Railway Company, alleging that they were the lessees in possession of the old Patterson place, lying on the Batesville branch of defendant's railway; that in the spring of 1890 the defendant caused a trestle in said branch road, and near said farm, to be closed up, thereby stopping a natural drainage of said farm; causing six acres of cotton and four acres of corn to overflow; that said overflow occurred during the year 1893, to their damage $150. An amendment to the complaint alleged that, in the spring of 1890, the defendant caused a trestle on its road near said farm to be closed up, thereby stopping a drainage of said farm through a ditch that had been dug prior to 1871, and serving as drainage for said farm before the building of said road, and up to the time of its stoppage.

The answer in its first paragraph denied every allegation contained in the complaint, and in paragraph two pleaded the statute of limitations of three years, alleging "that said trestle or drain had been closed up three years next before the commencement of the suit."

A demurrer to the second paragraph of the answer was interposed and sustained, all proper exceptions being saved. Upon the complaint and first paragraph of the answer the case was tried.

The court gave the following prayer, at the request of plaintiffs, over defendant's objections:

"The jury are instructed that if they find from the evidence that, on account of the stoppage of the trestle

on said defendant's railroad, plaintiffs' crops were overflowed and damaged, then they may find for the plaintiffs; and in estimating their damage they may take into consideration the rent of the land, the worth of cleaning it up, the worth of labor of preparing it for planting in, and the worth of work actually performed in cultivating it."

The court refused to give the following instructions asked by defendant:

"1.   The plaintiffs allege that in the spring of 1890 the defendant caused a trestle to be closed up on its Batesville branch, thereby stopping the drainage of their farm.  You are therefore instructed that, unless you find from the evidence that the defendant closed up said trestle and obstructed a natural drain, thereby causing plaintiff's land to overflow, you will find for the defendant.

"2.   It would not be sufficient to prove that water which formerly drained off of plaintiffs' land by passing through the trestle was, by the closing up of the trestle, caused to overflow his land, but he must show that in a state of nature, unaided by a ditch, such water flowed off of plaintiff's land to the place where the trestle was through a natural drain.

"3.   You are instructed that if, in order to drain the water from plaintiff's premises through the trestle in question, it was necessary to dig a ditch in that direction, and that without such ditch such water would not flow toward the trestle, then it was not such a natural drainage of water as would entitle the plaintiffs to have it kept open for their benefit, and the plaintiffs cannot complain on account of the closing of the trestle."

The jury returned a verdict for $86.25 for plaintiffs. A motion for a new trial was filed and overruled, exceptions saved, and defendant appealed.

*Dodge & Johnson*, for appellant.

1.  The action was barred by limitation.  35 Ark. 622; 39 *id.* 465; 50 *id.* 250; 52 *id.* 244; 56 *id.* 612.

2.  The court erred in its instruction as to the measure of damages.  56 Ark. 613; 57 *id.* 399; 10 S. W. 576; 47 Ga. 26; 41 Wis. 602; 11 S. W. 123; 16 Ill. 534; 67 Barb. 88.

BATTLE, J.  1.  A railroad company has no right to fill up a ditch made for the purpose of drainage over lands afterwards acquired by it for a right of way, when the person owning the soil drained made said ditch over his own land, or had acquired the right of drainage thereby as an easement.  It has no right to obstruct such drainage, but if it has occasion to cross the drain by an embankment or raised way, it is its duty to place a culvert or covered drain under it to carry off the water as before, and for a neglect to perform this duty is liable for the damages caused by the failure.  *Proprietors of Locks and Canals* v. *Nashua & L. R. Co.*, 10 Cush. 385. <span style="float:right">Liability of railway company for obstructing drain.</span>

2.  The next material question for consideration is, in what time shall an action for the damages occasioned by such an obstruction be brought?  In *St. L., I. M. & S. Railway* v. *Biggs*, 52 Ark. 240, it is said:  "Whenever the nuisance is of a permanent character, and its construction and continuance are *necessarily* an injury, the damage is original, and may be at once fully compensated.  In such case the statute of limitations begins to run upon the construction of the nuisance."  *St. L., I. M. & S. Railway* v. *Morris*, 35 Ark. 622, and *Little Rock & Ft. S. Railway* v. *Chapman*, 39 Ark. 463, are cited to sustain the rule.

In *Railway* v. *Morris*, *supra*, "a solid roadbed embankment was built across a wet weather stream which drained an area of several square miles."  The railway company left an open trestle at a considerable distance from the natural crossing, and endeavored, without success, to drain off the water through that.  The

court held that the evidence justified the jury in finding that damage had resulted from the failure to use due care and skill in constructing the roadbed, and that the action for the recovery of such damage should be brought within three years from the time the embankment was completed.

In *Railway* v. *Chapman, supra,* the appellant "erected and maintained an embankment on its right of way, across a natural drain or swale, through which the accumulation of waters from the surrounding country, in their natural flow, had previously passed off from the land of appellee and into the Arkansas river. Appellant had, by reason of a failure to place sufficient culverts or drain pipes in said embankment and roadbed, obstructed the usual flow of water across the grounds occupied by the defendant, and had dammed up the water, and caused it to flow back and accumulate on the appellee's land." This court held that an action for the damages caused by the embankment should be brought within three years after its completion.

<div style="margin-left:0"><em>Damage for obstruction of drain.</em></div>

So, in this case, the obstruction of the ditch was permanent; that is, it will continue without change from any cause except human labor. The effect of it was to restore the land drained to the condition in which it was before the ditch was dug. Its present and future effect upon the land could be ascertained with reasonable certainty. The damage was original, and susceptible of immediate estimation. "No lapse of time was necessary to develop it." It was the difference between the value of the land as it would have been with the ditch open, and the value of it with the ditch closed. *St. L., I. M. & S. Railway* v. *Morris,* 35 Ark. 622; *Chicago & E. I. R. Co.* v. *Loeb,* 118 Ill. 214.

<div style="margin-left:0"><em>Limitation of action for obstructing drain.</em></div>

As the law does not favor the multiplicity of suits, and all damages which will be sustained as the necessary result of the filling of the ditch in question, and are

recoverable, could have been estimated at the time of such obstruction, from the effect of it upon the value of the land, only one action should be brought therefor, and that within three years after the ditch was closed up.

The rule for the measure of damages recoverable in an action at law for the destruction of crops is given in *Railway Co.* v. *Yarborough*, 56 Ark. 613. It is unnecessary to repeat it here.

Reversed and remanded, with instructions to over-rule the demurrer to the second paragraph of appellant's answer, and to grant a new trial.