INTERNATIONAL SHOE COMPANY *v.* GIBBS.

Opinion delivered March 30, 1931.

H. B. Means and McRae & Tompkins, for appellant.
Joe W. McCoy and John L. McClellan, for appellee.

HART, C. J., (after stating the facts). The first contention in the case is upon the ruling of the circuit court on the question of the measure of damages. Appellant insists that the court·erred in telling the jury that, in event it allowed a recovery by appellee, the measure of damages would be the difference in value of his land immediately before and after the stream running through his land was used as an outlet for the sewage from the septic tank constructed by appellant. The instruction was based upon the theory that the damages to the land of appellee were permanent. Appellant contends that the injury, if any, was only temporary, and that the measure of damages for appellee would be the diminution in the rental value of his land. The action by appellee against appellant was for damages for an injury resulting from the construction and operation of a septic tank by appellant whereby its sewage was discharged from the tank and allowed to flow into the branch or creek running through appellee's land and which rendered the water unfit for use by cattle and polluted the air by

noxious and offensive odors about a dwelling house on his land.

The general policy of the law in such cases is to avoid a multiplicity of actions, and, if practical, to afford compensation in one action for all injuries. Under a similar state of facts in the cases of municipal corporations and sewer districts organized in them, where the sewage was discharged into the bed of a stream, the riparian owner was allowed to recover on the ground that the nuisance thus created was of a permanent and continuous character, and the landowner damaged was allowed to recover in one action all damages, past and future, which the nuisance has caused or will occasion in the future. Hence it was held that the measure of damages was the depreciation in the market value of the riparian owner's land immediately before and after the nuisance was created. *McLaughlin* v. *Hope,* 107 Ark. 442, 155 S. W. 910, 47 L. R. A. (N. S.) 157; *El Dorado* v. *Scruggs,* 113 Ark. 239, 168 S. W. 846; *Jones* v. *Sewer Imp. Dist. No. 3 of Rogers,* 119 Ark. 166, 177 S. W. 888; and *Sewer Imp. Dist. No. 1 of Wynne* v. *Fiscus,* 128 Ark. 250, 193 S. W. 521, L. R. A. 1917D, 682.

In the cases cited the court said that the municipal corporations and sewer districts in constructing the sewer systems so as to turn the sewage into the streams, indicated an intention to acquire a permanent right to pollute the stream, and the damages to the riparian landowner should be assessed upon that basis and as though the corporation was proceeding to acquire it under the power of eminent domain. The court further said that the turning of the sewage into the stream and the pollution of the water to the damage of the riparian owner constituted a taking or at least a damage to the property for public use within the meaning of the Constitution.

The same rule and the same reasoning has been applied in the case of *quasi*-public corporations, such as railroads, under similar state of facts. *St. L. I. M. & S. Ry. Co.* v. *Biggs,* 52 Ark. 240, 12 S. W. 331, 6 L. R. A. 804,

30 Am. St. Rep. 174; *St. L. I. M. & S. Ry. Co.* v. *Anderson,* 62 Ark. 360, 35 S. W. 791; *Turner* v. *Overton,* 86 Ark. 406, 111 S. W. 270, 20 L. R. A. (N. S.) 894; *C. R. I. & P. Ry. Co.* v. *Humphreys,* 107 Ark. 330, 155 S. W. 127, L. R. A. 1916E, 962; and *Yates* v. *Missouri Pac. Rd. Co..* 168 Ark. 170, 269 S. W. 353, 38 A. L. R. 1434.

Where the injury was of a permanent and continuing character, the rule as to the measure of damages has been the same in cases where the wrong was caused by a private person or corporation. *Czarnecki* v. *Bolen-Darnell Coal Co.,* 91 Ark. 58, 120 S. W. 326; *Junction City Lumber Co.* v. *Sharp,* 92 Ark. 538, 123 S. W. 370; *Falcon Zinc Co.* v. *Flippen,* 171 Ark. 1151, 287 S. W. 394; *Standard Oil Company of La.* v. *Goodwin,* 174 Ark. 602, 299 S. W. 2; and *Arkebauer* v. *Falcon Zinc Co.,* 178 Ark. 943, 12 S. W. (2d) 916.

Our attention has not been called to any distinction in the authorities generally in the application of the rule in connection with corporations having the power of eminent domain and in cases arising where the injury complained of was not caused by the exercise of that power. The fact that the injury was caused by the exercise of the power of eminent domain has been considered of no importance except as showing that the structure was permanent in character. *Virginia Hot Springs Co.* v. *McCray,* 106 Va. 461, 56 S. E. 216, 10 Ann. Cas. 179; *Highland Avenue & Belt Railroad,* 99 Ala. 24, 10 So. 267, 14 L. R. A. 462.

If appellant had possessed the power of eminent domain, and had the damages been assessed in condemnation proceedings, it would not have acquired title to the land. The same damages would have been awarded, and damages, which can be assessed in condemnation proceedings, can be assessed just as well in an ordinary action at law. When the tank was constructed, it was evidently intended by appellant that it should be permanent, and it has been so treated and used by it ever since. As long as the sewer is used, just so long will the nuisance con-

tinue to injure the land of appellee. This court has recognized the rule that, when a nuisance is of such a character that its continuance is necessarily an injury and is of a permanent character, so that it will continue without change from any cause but human labour, the damage is original and can be at once fully compensated. *St. L. I. M. & S. Ry. Co.* v. *Anderson,* 62 Ark. 360, 35 S. W. 791.

In the instant case, at the trial the parties treated whatever injury might be caused by the pollution of the stream by the discharge in it of the sewage and the noxious odors arising therefrom around the dwelling house as of a permanent and continuous character. Appellant did not even ask the court to submit to the jury the question whether the damage or injury to appellee was temporary or permanent. Having failed to ask that this question of fact should be submitted to the jury, it cannot now complain that the court submitted to the jury the case upon the theory that the damage was original and susceptible of immediate estimation.

It is next insisted that the verdict in favor of appellee for $1,000 was excessive. The witnesses for appellee estimated the value of the land for all purposes immediately before the construction of the alleged nuisance was somewhere from $3,500 to $6,000. Some of the witnesses said that the land was damaged fifty per cent. or more by the discharge of the sewage into the branch running through appellee's land. The jury might have found from the testimony of the witnesses that the land was not only valuable for use as a cow pasture, but that it was also susceptible of being cut up into small lots and sold to people desiring to erect houses in the immediate vicinity of the city of Malvern. When all the uses to which the land might be adapted are considered, it cannot be said that the jury's finding that the land was damaged to the extent of $1,000 is excessive.

We find no reversible error in the record, and the judgment will be affirmed.