FIRST NATIONAL BANK *v.* PEUGH.

Opinion delivered October 29, 1923.

1.  CONTRACTS—SALE OF GOOD WILL—QUESTION FOR JURY.—In a suit on a note given for the good will of a business, to which the defense was that the note was, by the terms of the contract, void because the seller had violated his contract by reentering the business, evidence *held* to raise an issue for the jury.

2.  CONTRACTS—SALE OF GOOD WILL—BREACH.—Where, in the sale of a dray business, the seller obligated himself not to haul any goods in a certain town or to infringe in any way on the purchaser's dray business, and the evidence showed that the latter's business included hauling out of the town, it would be an infringement of the contract if the seller engaged in the business of hauling either within or from the town.

3.  BILLS AND NOTES.—BONA-FIDE PURCHASER.—One who takes negotiable paper before maturity in payment of or as security for an antecedent debt, without notice of any defect, receives it in due course of business, and is a holder for value free from any equities of the maker or indorser.

5.  TRIAL—INSTRUCTION—GENERAL OBJECTION.—A general objection is sufficient to take advantage of an inherently erroneous instruction.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; reversed.

*Norwood & Alley,* for appellant.

Appellant should have had a directed verdict. To sustain a verdict on appeal there must be some substantial evidence to support it. 118 Ark. 349; 69 Ark. 659; 7 Ark. 435. A judge should not express his opinion upon the evidence. It constitutes prejudicial error. 34 Ark. 696; 98 Ark. 83; 116 Ark. 482. Incompetent evidence was admitted and must be treated as prejudicial unless shown that it was not. 69 Ark. 648; 105 Ark. 205;

89 Ark. 556. Instruction No. 4 should have been given. It was based upon the contract, the language of which contains no ambiguity. 67 Ark. 553; 79 Ark. 172; 105 Ark. 213; 101 Ark. 353; 112 Ark. 165; 131 Ark. 134; 149 Ark. 55; 145 Ark. 344. Instruction No. 6, to the effect that, if Keller did some hauling for Hall with Hall's truck, this was not a violation of the contract, should have been given. 91 Ill. App. 81; 45 Iowa 106; 137 Iowa 636; 60 N. H. 198; 35 Pac. 395; 119 N. W. 358. The intention of the parties to a contract should be derived from the whole instrument. 109 Ark. 537; 116 Ark. 212. Instruction No. 3, given for plaintiff, without the amendment offered by defendant, was erroneous. One who receives a negotiable instrument before maturity, as collateral security for a preexisting debt, may be a holder for value in due course of business. 94 Ark. 387; 102 Ark. 422. Appellant released its mortgage on the property Keller sold to Appellee. This was a valuable consideration. 63 Ark. 604.

*Minor Pipkin* and *Lake & Lake,* for appellee.

A plea of *res judicata,* to become effective, must be made an issue by the pleadings themselves. 107 Ark. 38. The construction of the contract was for the jury, since it did not clearly appear upon its face what the intention of the parties was. 99 Ark. 368; 81 Ark. 561.

Wood, J. This is an action by the appellant against the appellees. The appellant alleged, among other things, that it was the holder of a certain promissory note executed January 4, 1922, by the appellees to one I. T. Keller in the sum of $1,075 with interest, on which there had been a payment of $225, leaving a balance of $850 due, with interest at 10 per cent. from July 4, 1922. It alleged that the note was secured by a mortgage on certain personal property, which it described, and prayed that it might have judgment for the balance due on the note and for possession of the property, in order that it might sell the same and apply the proceeds to the payment of the note. The appellee answered,

admitting the execution of the note and mortgage, and set up, by way of affirmative defense and for cross-relief, that, at the time of the execution of the note, a contract was entered into between Keller and Peugh whereby Peugh purchased of Keller his dray business in the town of Hatfield, together with the good will of the business; that, by the terms of the contract, Keller, in consideration of the purchase money, agreed that he would not re-enter the dray business, and that, if he did so, the note should become null and void and the amount thereof considered as liquidated damages for such breach of contract; that Keller, in violation of the contract, re-entered the dray business in the town of Hatfield, and, after he had thus breached the contract, refused to deliver the note to the appellees. The appellees also averred that the appellee Peugh had complied in all particulars with the terms of the contract on his part. They denied that the appellant was the legal holder of the note, and denied that the appellant was entitled to recover the amount thereof from the appellees. They also denied that they unlawfully detained the possession of the property from the appellant. They prayed that the complaint be dismissed, and, as cross-relief, that the appellant be ordered to surrender the note, and that same be canceled.

At the conclusion of the evidence adduced by the respective parties the issues were submitted to the jury on instructions of the court. The jury returned a verdict in favor of the appellees, and from a judgment in their favor is this appeal.

1. The appellant contends that the court erred in not granting its prayer for instruction directing the jury to return a verdict in its favor. Without setting out and discussing the testimony on this issue, it suffices to say, we have examined same, and we conclude that there was an issue for the jury to determine under the evidence.

2. The appellant prayed certain instructions concerning the construction of the written contract

between Keller and Peugh evidencing the sale of Keller's dray business to Peugh. That contract, so far as it is material to set forth, is as follows: "This contract and agreement entered into this 5th day of January, 1922, by and between I. T. Keller, hereafter known as the party of the first part, and L. A. Peugh, hereinafter known as the party of the second part, witnesseth: Party of the second part has bought the dray business from the party of the first part in the incorporated town of Hatfield, Arkansas, and said party of the first part hereby agrees that he will not haul, transfer or in any way deliver any merchandise, household goods, or any other article for pay in said town; that he will not in any way infringe on the dray business of the party of the second part. Should the party of the first part not do as he agrees above, then payments mentioned in a certain note and mortgage from party of the second part to party of the first part become null and void, and said payments shall cease, unless it is mutually agreeable between both parties that said delivery or deliveries be made."

Under the terms of this contract Keller could not, after that day, haul, transfer, or in any way deliver merchandise, household goods, or any other article for pay in the town of Hatfield. Keller, under this contract, as we construe it, could not accept the articles mentioned in the contract to be hauled, transferred or delivered for pay, where such was done wholly within the town of Hatfield, nor could he accept such articles to be hauled, transferred or delivered for pay, whether the hauling, transferring, or delivering was to be done within or without the town of Hatfield, because, by the express terms of the contract, Keller agreed that he would not in any way infringe on the dray business of Peugh. It would be an infringement on the dray business of Peugh to haul, transfer or deliver any of the articles mentioned, either within or without the town of Hatfield, because the undisputed testimony shows that the dray business

which Keller was engaged in and which Peugh bought extended beyond the corporate limits of the town of Hatfield. This case is clearly differentiated on the facts from the case of *McDonald* v. *Paragould*, 120 Ark. 226, upon which appellant relies.

To be sure, Peugh could waive the provisions of the contract for his benefit and consent for Keller to carry on a dray business, but, in the absence of such consent, Keller could not conduct a dray business for pay within the town, nor could he conduct it outside of the town, without Peugh's consent, because that would be infringing on the dray business which Peugh had purchased.

It is unnecessary to set out and discuss in detail the prayers of appellant for instructions concerning the construction of the contract. Suffice it to say, according to the interpretation of the contract, *supra*, there was no error in the rulings of the court in refusing such prayers.

3. The court, among other instructions, gave the following, at the instance of the appellee: "No. 3. You are instructed that the assignment of the Peugh note to the First National Bank must have been supported by a valuable consideration before the bank could become an innocent holder thereof, even though it took it before maturity, and taking the note to secure a preexisting indebtedness owing by Keller to the bank would not be a valuable consideration." The record shows that the appellant asked the court to modify the instruction by adding, "unless the bank agreed to give up a mortgage it already had on the same property." The record recites that "instruction No. 3 asked by the defendant was by the court given, over the general objection made by the plaintiff, to which action of the court the plaintiff at the time excepted, and asked that its exception be noted of record, which was accordingly done." The undisputed evidence showed that the appellant released the mortgage it held on the property which Keller sold to Peugh, and that appellee's note and mortgage to

Keller were assigned by Keller to appellant in lieu of the mortgage appellant had released. "One who takes negotiable papers before maturity in payment of, or as security for, an antecedent debt, without notice of any defect, receives it in due course of business and is holder for value, free from any equities of the maker or indorser." *Miles* v. *Dodson,* 102 Ark. 422; *Exchange National Bank* v. *Cole,* 94 Ark. 387. The instruction was directly in conflict with the doctrine announced in the above cases. If the court had given the instruction with the modification requested by the appellant, no prejudice could have resulted to the appellant in the giving of the instruction, under the undisputed evidence. But, without the modification, the appellant was necessarily prejudiced by the ruling of the court in giving the appellee's prayer for instruction No. 3. The objection made by the appellant and the refusal of the court to make the modification requested, and the granting of the prayer for instruction without the modification, was tantamount to giving the prayer for instruction over the general objection of appellant. The instruction, as it appears from the doctrine of the above cases, was inherently erroneous, and the general objection to it was sufficient.

There are several other assignments of error which we have considered, but they are not of sufficient importance to discuss. We find no reversible error in any of the rulings of the court except in the giving of appellee's prayer for instruction No. 3, *supra.* For this error the judgment is reversed, and the cause is remanded for a new trial.