ARKEBAUER *v.* FALCON ZINC COMPANY.

Opinion delivered January 21, 1929.

944

Dave Partain, for appellant.

E. L. Matlock and C. M. Wofford, for appellee.

MEHAFFY, J. The appellee, Falcon Zinc Company, owns and operates a zinc smelter located near the city of Van Buren, in Crawford County, Arkansas. Each of the appellants brought a separate suit against the appellee, each of them alleging that he owned a farm in the immediate vicinity of appellee's smelter. The suits were filed in August, 1927. The smelter had been built for several years, and appellants had alleged that the appellee had operated this smelter for a period of something more than three years, smelting large quantities of ore in its furnaces each day; that their lands, before the location and operation of the said smelter, were fertile and productive farming lands of great value, but that the appellee, during and throughout the past three years immediately preceding the filing of the suits, by and with the operation of said smelter has thrown great quantities of noxious gases, sulphur and sulphates, oxide of lead, carbon dioxide gases, and other poisonous products, the exact character being unknown to the appellants, but well known to appellee, upon and over said lands, and thereby killed the crops and vegetation growing thereon, so that, when appellants grazed stock on said lands and stock ate the grasses on which these poisonous deposits had fallen, the stock became ill and injured; and that, by reason of the conduct of the appellee, the said appellee has rendered the lands of the appellants barren and unproductive, and has greatly injured the appellants, and that plaintiffs have been damaged in the amount sued for.

The smelter filed answer, denying the material allegations in the complaint, and alleging that it began operation in March, 1923, and operated the smelter continuously up to the time of the commencement of the suits; that, if it had damaged plaintiff's land, the injury was original, and plaintiff's right of action, if any ever existed, accrued immediately, and the statute of limitations began to run against the same at said time, and that the right of action was barred because not begun within three years after they began the operation. Appellee also asked for damages in the sum of $500 for wrongfully suing out of an attachment.

There was come conflict in the testimony, but there was ample testimony to authorize the court to submit the question to the jury as to whether the operation of the smelter caused injury. While the evidence was in conflict, it was a question for the jury as to whether the smelter caused the damage. It would serve no useful purpose to set out the testimony at length.

At the request of the appellee the court gave to the jury the following instruction:

"The defendant in these cases pleads the three-year statute of limitation as a bar to recovery. If you find from a preponderance of the evidence that plaintiff's lands have been damaged by the operation of defendant's smelter and that the injury to the land began when defendant started the smelter in operation in March, 1923, and continued as long as the smelter was in operation, and if you further find that the damage to plaintiff's lands was original, then your verdict must be for the defendant, as plaintiff's causes of action would be barred because these suits were not commenced within three years after defendants commenced to operate said smelter."

The court also gave instruction number two, requested by appellee, which is as follows:

"If you find from a preponderance of the evidence that plaintiff's lands have been damaged by the operation of defendant's smelter, then you will find whether

each tract has been permanently rendered unfit for all reasonable natural uses by the operation of said smelter, and if you find that said lands have been completely and permanently destroyed for all reasonable natural uses, you will find the difference between the market value of the lands before they were permanently damaged and the present market value of the same after being so damaged, taking into consideration the general conditions affecting the market values then and now, and your verdict should be for each of the plaintiffs for such sum as you find that each has been so damaged. If you find from a preponderance of the evidence that plaintiff's lands have been permanently damaged in part for all reasonable natural uses by the operation of defendant's smelter, then you will find the difference in the market value of each tract before it was so damaged and the present market value of the same, taking into consideration the partial permanent damage to the same, and your verdict will be for each of the plaintiffs for such sum as you find their respective lands to be damaged. If you find from a preponderance of the evidence that plaintiff's lands have been damaged only temporarily, wholly or in part, by the operation of defendant's smelter, and that, if the operation of the smelter should not be resumed, the injury to their said lands has ceased, then you will find the difference, if any, in the rental value of each of their said tracts of land before and since the injury occurred, and your verdict will be for each of the plaintiffs for such sum as you so find each has been so damaged in the rental value of their respective tracts of land. If you find from the evidence that plaintiff's lands have not been damaged, wholly or in part, permanently or temporarily, by the operation of defendant's smelter, then your verdict must be for the defendant.''

There was a verdict for the defendant, and the plaintiffs prosecute this appeal to reverse said judgment.

It is first insisted by appellant that instruction number one was erroneous. That instruction, it will be ob-

served, told the jury, if they found that plaintiff's land had been damaged by the operation of the smelter and that the injury to the land began when the defendant started the smelter in operation in March, 1923, and continued as long as the smelter was in operation, and if they further found that the damage to plaintiff's land was original, then they must find a verdict for the defendant, as plaintiff's cause of action would be barred because these suits were not commenced within three years after defendant commenced to operate the smelter.

This court has in numerous cases held that, notwithstanding the damage or injury might be original, the action was not necessarily barred. The rule announced by this court and followed by many cases, in speaking of the construction of a plant alleged to have caused damage, is as follows:

"If it is of such a construction as that damage must necessarily result, and the certainty, nature and extent of this damage may be reasonably estimated and ascertained at the time of its construction, then the damage is original, and there can be but a single recovery, and the statute of limitations against such cause of action is set in motion upon the completion of the obstruction."

But the court has uniformly held that, if it was known merely that damage was probable, or even if it is known that some damage is certain, and the nature and extent of that damage cannot be reasonably known and fairly estimated, but would be only speculative and conjectural, then the statute of limitations is not set in motion until the injury occurs. In other words, where a plant is constructed, even though it may be known that some damage will be caused by its operation, still the action is not barred within three years from the time of the construction of the plant unless the nature and extent of the damage can be reasonably known and fairly estimated.

The instruction complained of, while it stated that, if the damage was original, there could be no recovery, also stated that, if the jury find that the damage to plain-

tiff's lands was original, they should find for the defendant, because the plaintiff's cause of action would be barred. The court told them that the suits would be barred because not begun within three years after the defendant commenced to operate said smelter. There is no contention that the appellee was negligent, either in the construction or the operation of its smelter; but the contention is that the fumes and deposits on the land killed the vegetation and injured and destroyed the value of the land, but that the nature and extent of the damage was not known at the time of the construction of the smelter.

This court recently approved an instruction as follows:

"You are instructed that, if you find from a preponderance of the evidence that the defendant caused the plaintiff to suffer damage from the operation of its plant within three years prior to the date of the filing of the complaint herein, plaintiff's cause of action is not barred by the statute of limitations, unless you further find that the construction and operation of said plant was such that damage must necessarily result in such manner that the certainty, nature and extent of the damage could have been reasonably estimated and ascertained at the time of its construction and the beginning of operations. In other words, if it was known merely that damage was probable, or that, even though some damage was certain, the nature and extent of that damage could not be reasonably known and fairly estimated, but would be only speculative and conjectural, then the statute of limitations was not set in motion until injury occurred, and in such case there may be as many successive recoveries as there are injuries." *Brown* v. *Arkansas Central Power Co.*, 177 Ark. 1064, 9 S. W. (2d) 325.

Original, as used in the instructions, means original construction. That is, the damage results or is caused by the operation of the plant as it was originally constructed. And therefore all the damage that resulted or was caused by the operation of the plant was in that

sense original. There was no charge of negligence in the construction or the operation. Original damage means that damage that was caused by the operation of the plant as it was originally constructed. An "original construction" is defined by Bouvier's Law Dictionary, vol. 3, 2427, as follows: "This term, as distinguished from repairs, has a technical meaning in relation to railroads, and is that construction of bridges, etc., that is necessary to be done before the railroad can be opened, not such structures as are intended to replace wornout counterparts."

Instruction number one was erroneous as given. *Brown* v. *Ark. Central Power Co.*, 174 Ark. 177, 294 S. W. 709; *C. R. I. & P. Ry. Co.* v. *Humphreys*, 107 Ark. 330, 155 S. W. 127, and cases there cited.

"Original means pertaining to the beginning or origin. An original damage here means damage by the operation of the smelter as originally built." The appellee contends that the instruction given in the case of *Brown* v. *Ark. Central Power Co.*, above referred to, differed only in verbiage from instruction number one in the instant case, and insists that instruction number one clearly conveyed to the jury appellee's plea of limitations. And the question as to whether the evidence showed appellant's damage, if any, was original, was a question of fact to be determined by the jury. It is true that, whether the damage was original or not, if there is any dispute about it, it would be for the jury, and it is also a question for the jury, under the facts in this case, whether the nature and extent of the damage could be reasonably known and fairly estimated, and this question was not submitted to the jury. Instruction number one ignored this question, which is a question of fact and which should have been submitted to the jury.

"When the original act or cause of injury is paramount in its nature and the damages, both present and prospective, may be recovered in one action, the statute will generally be regarded as attaching at the time the act complained of is done. But, where a wrongful act

results in a recurring or continuing injury, there is a cause of action not only for the injury consequent upon the original act but also for such successive ones as may result in the future, in which case the statute attaches at the time of the occurrence of the injury.'' 17 R. C. L. 785; *Bartlett* v. *Grasselli Chemical Co.*, 92 W. Va. 445, 115 S. E. 451, 27 A. L. R. 54.

It is also contended by appellee that a general objection to this instruction is not sufficient. We do not agree with appellee in this contention. If an instruction is inherently wrong, an incorrect statement of the law, as instruction number one in this case is, a general objection is sufficient. *First National Bank* v. *Peugh,* 160 Ark. 517, 255 S. W. 4; *M. P. Ry. Co.* v. *Johnson,* 167 Ark. 464, 268 S. W. 31; *Yaffee* v. *Ft. Smith Light & Traction Co.*, 153 Ark. 416, 240 S. W. 705; *Missouri Valley B. & I. Co.* v. *Malone,* 153 Ark. 454, 240 S. W. 719.

Appellant also contends that the court erred in refusing to permit the appellant to cross-examine expert witnesses. It is true that an opportunity ought to be given for a thorough cross-examination, and especially is this true where witnesses are testifying as experts, but the trial court has much discretion in conducting the examination and cross-examination, and we cannot say that its discretion was abused in this case, and this question will probably not arise in another trial.

For the error in giving instruction number one the judgment is reversed, and the cause remanded for a new trial.

Mr. Justice SMITH dissents.