Michelle SEWELL, Jean Edith Sewell, Linda Claire Sewell Chatton & Arthur William Sewell ("the Sewells") Plaintiffs

v.

PHILLIPS PETROLEUM CO., Kerr–McGee Oil & Gas Corp., BP Amoco p.l.c., Texaco Inc., BHP Petroleum (Americas), Inc. Defendants

No. 01–1062.

United States District Court,
W.D. Arkansas,
El Dorado Division.

April 12, 2002.

Samuel E. Ledbetter, McMath, Vehik, Drummond, Harrison & Ledbetter, P.A., Little Rock, AR, Gene A. Ludwig, Ludwig Law Firm, Little Rock, AR, J. Bruce McMath, McMath, Vehik, Drummond, Harrison & Ledbetter, P.A., Little Rock, AR, for plaintiff.

Steven J. Adams, J. Randall Miller, R. Todd Waddell, Gardere Wynne Sewell LLP, Tulsa, OK, Robert C. Compton, Compton, Prewett, Thomas & Hickey, El Dorado, AR, Ann P. Faitz, Chisenhall, Nestrud & Julian, Little Rock, AR, Charles R. Nestrud, Chisenhall, Nestrud & Julian, Little Rock, AR, Christopher O. Parker, Eichenbaum, Liles & Heister, P.A., Little Rock, AR, G. Alan Perkins, Hill, Gilstrap, Perkins & Warner, P.C., Little Rock, AR, Brian H. Ratcliff, Shackleford, Phillips, Wineland & Ratcliff, P.A., El Dorado, AR, Jeffery P. Reynolds, Jackson, MS, for defendants.

Michael Bonds, Arkansas Department of Environmental Quality, Little Rock, for movant.

### MEMORANDUM OPINION

BARNES, District Judge.

Now, on this 12th day of April, 2002, COMES ON FOR CONSIDERATION two motions in the above captioned matter: a Motion for Summary Judgment (doc. 56) by separate Defendant, Texaco Inc. ("Texaco"), and a Motion for Renewal of Texaco Inc.'s Statement of Undisputed Facts, Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment ("Renewal Motion")(doc. 66). The Court has reviewed these Motions along with the Sewells' Response (doc. 70), Texaco's Reply (doc. 74), and all other supporting documentation. The Court, being well and sufficiently advised, finds the issue is ripe and the Court is ready to rule.

The Sewells filed a Second Amended and Substituted Complaint (doc. 61) on November 8, 2001, five days after Texaco submitted this instant Motion for Sum-

mary Judgment based on the First Amended and Substituted Complaint (doc. 30). Texaco requests in its Renewal Motion (doc. 66) that the Court consider this Motion for Summary Judgment, Brief in Support and Statement of Undisputed Facts to be submitted against the Sewells' Second Amended and Substituted Complaint. Because the allegations and averments as to separate defendant Texaco are materially unchanged by the Second Amended and Substituted Complaint, the Court by Order of even date, grants Texaco's Renewal Motion.

In response to Texaco's Motion for Summary Judgment and for the reasons stated below, the Court grants in part, and denies in part. The Court finds that there remains a genuine issue of fact whether or not a Storage Contract (Exhibit A, Def's Mot. Summ. J.) is binding as between Texaco and the Sewells and so denies Summary Judgment for Texaco based upon any rights pursuant to that contract. The Court finds that the Arkansas Solid Waste Management Act (as codified in the Arkansas Code in § 8–6–201 *et seq.* hereafter "ASWMA") is remedial in nature and retroactive application is not improper and denies Summary Judgment for Texaco so predicated. The Court finds that the statute of limitations will not bar the Sewell's claims of common law trespass or violation of ASWMA and so denies Summary Judgment for Texaco so predicated. However, the Court finds as a matter of law, that the Sewells, as lessor of a given tract of land, may not maintain an action for common law nuisance against a previous lessee for lessee's activities on that tract and therefore grants summary judgment for Texaco on the nuisance claim.

## BACKGROUND

This action rises from the remains of exploration and production activities by the Defendant oil companies conducted on a tract of land situated in Ouachita County, Arkansas and beginning early in the 1920's and continuing to the present day. The Defendants have successively held an oil and gas lease on that tract of land. Over the years and pursuant to their lease, the oil companies explored and produced oil and gas on the subject property and on properties in proximity to the subject property. The Sewells, plaintiffs and current landowners of the tract, claim that the oil companies improperly utilized the land in handling, storage, treatment and disposal of oilfield wastes. Plaintiffs are seeking, *inter alia*, restoration of the property, abatement of improper activities, and damages both compensatory and punitive. Texaco attacks the Sewells' claim for recovery as pled under four of the theories in the Second Amended Complaint: two common law claims under trespass and nuisance and the two statutory claims under the federal Resource Conservation and Recovery Act, as codified in 42 U.S.C. §§ 6901 *et. seq.* ("RCRA") and the Arkansas Solid Waste Management Act, as codified in A.C. A. §§ 8–6–201 *et.seq.* ("ASWMA"). Defendant Texaco, who held the initial lease until 1943, argues in this instant Motion that it is entitled to judgment as a matter of law because of fatal defects in Plaintiffs' reliance on each of these four theories of action.

## STANDARD FOR SUMMARY JUDGMENT

Prosecution and disposition of a motion for summary judgement is governed by Rule 56. Courts order summary judgment where "... there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The posture of the Court and the order of proof are clear. Courts construe the evidence and all reasonable inferences in a light most favorable to the non-moving party, in this case, the Sewells. *Matsushi-*

ta *Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). Texaco, as movant, must first show there are no genuine issues of facts material to the instant case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden then shifts to the Sewells to show there remains a genuine issue of material fact to be adjudicated in the trial setting. *Anderson,* at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur,* 47 F.3d 953, 957. (8th Cir.1995). The burden is proof by specific facts, that is, the Sewells must do more than show some metaphysical doubt as to material facts. *Matsushita,* at 586, 106 S.Ct. 1348. But where the record could not lead a rational trier of fact to find for the Sewells, there is no genuine issue for trial and Texaco is entitled to judgment as a matter of law. *Anderson,* at 256, 106 S.Ct. 2505; *Krenik* at 957. A dispute is genuine where the evidence could lead a reasonable jury to find for either party. *Anderson* at 251–252, 106 S.Ct. 2505; *Westchem Agri Chem. Inc. v. Ford Motor Co.,* 990 F.2d 426 (8th Cir. 1993). A fact is material if it is outcome-determinative. *Anderson,* at 248, 106 S.Ct. 2505; *Get Away Club v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992). Summary judgment is most appropriate in those cases where the issues for resolution are primarily legal and not factual.

## DISCUSSION

Texaco argues it is entitled to judgment as a matter of law as to four causes of action pled in this case. Texaco argues that RCRA, ASWMA, nuisance and trespass are all barred by a storage contract between the Sewells and Texaco. Texaco also argues that ASWMA, nuisance and trespass are barred by the statute of limitations. In addition, Texaco argues that the ASWMA claim must fail because that statute may not be applied retroactively. Finally Texaco argues that the Sewell's have failed to state a claim for nuisance because nuisance will only lie as between the owners of two separate tracts not as between the owner of a tract of land and the former owner of mineral lease on the same tract of land. The Court will deal with each argument in turn.

### A. Effect of a storage contract between Texaco and the Sewells' predecessors in interest.

Texaco argues that the Sewells may not bring an action under trespass, nuisance, RCRA or ASWMA because the Sewells' predecessors in interest specifically authorized and participated in the very activities for which this current action is maintained. Texaco submits that the Complaint is a violation of the contract. The Sewells respond that the contract is not valid and in fact does not authorize Texaco's activities. They argue that the Storage Contract is not binding because the contract grantors did not have a valid interest in the land and they submit a decree from the Chancery Court of Ouachita County that quiets title to the property and brings into doubt the validity of the Storage Contract. The Sewells also maintain that even if the contract is valid, it does not grant Texaco the right to engage in activities complained of in this action. Texaco, in its Reply, does not respond or refute the Sewells assertions in this regard.

█ The Court need not wade far into the arguments of counsel with regard to the Storage Contract. Texaco's initial factual hurdle is the validity of the contract, a question material to the issue. Construing the evidence and all reasonable inferences from the evidence in a light most favorable to the Sewells', it would be impossible for

this Court to conclude with the evidence before it that a rational trier of fact might not find that the Storage Contract was invalid. Therefore denial of Texaco's Motion for Summary Judgment is proper to the extent it is predicated upon any theory concerning the Storage Contract.

*B. Effect of the statute of limitation on actions sounding in trespass.*

Texaco argues that the statute of limitations has run on any trespass claim because its actions ceased in 1943 and the resulting injury has been complete, open and obvious since that time. Actions for trespass on land are statutorily barred in Arkansas after three years. A.C.A. § 16–56–105(4) Texaco argues the limitations period accrues when the original trespass occurs and even where continuing trespass is found, recovery in Arkansas is limited to activities occurring during the three years before the action is filed. The Sewells argue that the limitation period has tolled because the trespass is continuing in nature and because the waste left by Texaco is a temporary and abatable injury. They cite § 161 of the Restatement (Second) of Torts and § 13 of Prosser and Keeton on the Law of Torts and cases in other jurisdictions for the definition of continuing trespass.

█ It is undisputed that Texaco's activities ended in 1943, and that injury (in some form and in some quantity) has been open and obvious for many years. The question then rises whether the three year statute of limitations can be tolled when Texaco's last activity on the site was more that 50 years ago. Because this Court sits in diversity on these matters, issues concerning substantive law will be governed by Arkansas state law. *Erie Ry Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The duty of the federal court is "... to follow the Arkansas interpretation unless the Arkansas Supreme Court would follow another interpretation at this time if provided the opportunity to do so." *Taylor v. Ark. La. Gas Co.,* 604 F.Supp. 779, 783 (W.D.Ark.1985). This Court has read the cases cited by Texaco and found numerous other cases concerning continuing trespass and helpful to this instant action. [1] The facts of these cases are not identical to the case at hand, but that will not preclude their usefulness here or the precedence they stand for. It simply means that their value in fleshing out Arkansas law on trespass must be carefully teased away from the factual delineations that seem at first blush to cloud the analysis.

In *Robinson v. City of Ashdown,* the Arkansas Supreme Court implicitly recognized the concept of continuing trespass. 301 Ark. 226, 231, 783 S.W.2d 53 (1990). Where the City's sewer system caused raw effluent to repeatedly backed up into the plaintiff's home over a period of many years, the Court, citing a Florida case with approval, found that "[a]lthough injury to property through negligence or trespass does not, without more, qualify as a taking, it has been held that a continuing trespass or nuisance can ripen in to inverse condemnation." *Id.* at 230, 783 S.W.2d 53 (citations omitted).

In *Missouri Pacific Ry. Co. v. Holman,* one of many overflow cases, the Arkansas Supreme Court ruled on the issue of whether the statute of limitations would

---

**1.** *United States v. Hess,* 194 F.3d 1164 (10th Cir.1999); *Nieman v. NLO, Inc.,* 108 F.3d 1546 (6th Cir.1997); *In re Burbank Environmental Litigation* 42 F.Supp.2d 976 (C.D.Cal. 1998); *Union Pacific Ry. Co. v. Reilly Ind. Inc.,* 4 F.Supp.2d 860 (D.Minn.1998); *Dombrowski v. Gould Electronics,* 954 F.Supp. 1006 (M.D.Pa.1996); *Hyon Waste Management Serv. Inc. v. City of Chicago,* 214 Ill. App.3d 757, 158 Ill.Dec. 335, 574 N.E.2d 129 (1991).

bar recovery for damage from the overflow of water onto plaintiff's land when the defendant's drainage system was constructed more than 10 years before the suit was filed. 204 Ark. 11, 160 S.W.2d 499 (1942). The Court denied defendant's contention that the statute ran unabated from the date of the construction of the drainage system. *Id.* at 13, 160 S.W.2d 499. The Court quoted its previous opinion in an overflow case discussing the distinction between a trespass causing permanent damage for which the statute runs from date of construction and a continuing trespass situation where the limitations time will begin to run anew:

> ...permanency [of the structure] does not of itself determine whether the damages which result from its erection are original or recurring. If it is of such a construction as that damage must necessarily result, and the certainty, nature, and the extent of this damage may be reasonably ascertained and estimated at the time of its construction, then the damage is original, and there can be but a single recovery, and the statute of limitation against such cause of action is set in motion on the completion of the obstruction. If it is known merely that damage is probable, or that, even though some damage is certain, the nature and the extent of that damage cannot be reasonably known and fairly estimated, but would be only speculative and conjectural, then the statute of limitation is not set in motion until the injury occurs, and there may be as many successive recoveries as there are injuries.

*Id.* at 13–14, 160 S.W.2d 499, *quoting Chicago, R.I. and P. Ry. Co. V. Humphreys,* 107 Ark. 330, 335, 155 S.W. 127 (1916). *See also St. Louis–San Francisco Railway Co. v. Spradley,* 199 Ark. 174, 133 S.W.2d 5 (1939) (cited by Texaco and containing the same language).

In *Quality Excelsior Coal Co. v. Reeves,* the Court dealt with a case where the owner of a tract of land had leased the mineral rights to the defendant's successors in interest. 206 Ark. 713, 177 S.W.2d 728 (1944). The tunnel system created to remove the coal was later used by the defendant to transport coal mined from adjacent tracts of land up to the surface. *Id.* at 719, 177 S.W.2d 728. The Court found the defendant committed a trespass in transporting coal mined from other lands through the tunnel system and held that the actions (committed over many years) constituted a continuing trespass and allowed recovery for the acts of the defendant. There was no discussion of whether the recovery was limited to the three years immediately preceding the action. *Id.* at 722, 177 S.W.2d 728.

In *Coleman v. United Fence Company,* the Arkansas Court found that a vehicle abandoned on the property of another constituted a continuing trespass. 282 Ark. 344, 668 S.W.2d 536 (1984). The Court cited with approval § 13 of Prosser and Keeton on the Law of Torts which provides in part:

> The ordinary trespass is complete when it is committed; the cause of action accrues, and the statute of limitation begins to run at that time, although the consequences may be a permanent injury to the land. But in many cases, as where the defendant erects a structure or dumps rubbish upon the land of plaintiff, the invasion is continued by a failure to remove it. In such a case there is a continuing wrong so long as the offending object remains.

The Law of Torts, § 13 p. 83. These cases are sufficient to find that the Arkansas Supreme Court has favorably received the notion that where the trespass is construed as continuing in nature, the limitation period is effected.

Texaco cites three cases for the proposition that the statute of limitations has run

on Texaco's activities on the Sewell's land. *Atlanta Exploration, Inc. v. Ethyl Corp.,* 301 Ark. 331, 784 S.W.2d 150 (1990); *St. Louis–San Francisco Railway Co. v. Spradley, supra;* and *Arkebauer v. Falcon Zinc Co.,* 178 Ark. 943, 12 S.W.2d 916 (1929). Reliance on *Spradley,* an overflow case, is misplaced. *Spradley* only teaches that the limitations period does not accrue on the date of the construction of the structure but on the date of the flood that causes damage and where multiple floods occur, recovery is limited to flood events that occurred in the last three years before the Complaint is filed.

The nature of the damage in *Arkebauer* may be more factually similar to the damage alleged in the instant case but Texaco's reliance on it for the proposition that the limitations period ran, at the latest, three years after Texaco ceased operations on the property, misconstrues its holding. In *Arkebauer,* nearby farmers sued the operator of a zinc smelter for injury to crops and livestock and damage to land from airborne contaminants from the smelting process. The smelter contended that the suits were barred because the construction on the smelter itself was completed more than three years previous to the suit. The case on appeal concerns a jury instruction, found to be error because it failed to instruct the jury that they must determine if the damage was original to the construction of the smelter and if the nature and extent of the damage was reasonable ascertainable at that date. Because those two fact questions were not submitted to the jury, it was error to instruct that the limitations period accrued upon construction of the smelter without a specific instruction on whether injury was also original to the smelter and ascertainable at the time of construction. The Court found the nature of the damage from zinc smelting to be a

"...recurring or continuing injury [such that] there is a cause of action, not only for the injury consequent upon the original act, but also for such successive ones as may result in the future, in which case the statute attaches at the time of the occurrence of the injury."

*Id.* at 950.

*Atlanta Exploration* is a case where an oil and gas company paid royalties to the wrong party under the false assumption that party was the lessor of the portion of the mineral lease at issue in the case. This case is of limited use because of the standard of review and the limited question presented on appeal of whether the claim was barred because the statute accrued on the date of first royalty payment or whether, as the trial court held, the recovery was to be limited to the three years preceding the filing of the action. The case held that the trial court's finding of the latter was not clearly erroneous.

At this point the Court turns to the question of whether the instant alleged trespass is continuing in nature. Because the issue is presented in summary judgment posture, we need reach only a threshold finding that there are sufficient facts so it would be impossible to say that a reasonable jury might not conclude that Texaco placed solid waste on the Sewell's land, that their waste remains on the land today, and that harm has damaged and continues to damage the land and therefore, Texaco has committed a continuing trespass. However, simply construing the trespass as continuing will not end our analysis. The Court must construe the nature of the continuing trespass to determine what effect, if any, flows thereby to the limitations period.

■ In light of the Arkansas cases and a review of caselaw in other jurisdictions it is clear that accrual of the limitation period as well as tolling and running of the statute depends upon the nature of the trespass. The statute of limitations in

trespass will accrue on the date of the original injury where a factual determination is made that the damage is original to the construction or initiation of the trespass and that the nature and extent of the injury is reasonably ascertainable at that same time. *See Arkebauer* (explanation of when the damage is "original"). If the injury is original but either the presence of the offending object is not ascertainable or the extent of the injury is not ascertainable, then the discovery rule will toll the statute for a time. [FN. 2]

> [FN. 2]. In *State of Arkansas v. Diamond Lakes Oil Company*, the Arkansas Supreme Court recently handed down a decision involving a statute of limitations issue in a gasoline contamination case where the injury was the occurrence of the tank rupture but the but the nature and extent of the damage to adjoining property was not apparent at the time of rupture. 347 Ark. 618, 66 S.W.3d 613 (2002). In that case, the only theory advanced by the plaintiff at the trial level for tolling the three year limitations periods was the discovery rule. The Court found that the discovery rule tolled the statute and reiterated its previous holding that "...if there is any reasonable doubt as to the application of the statute of limitation, this court will resolve the question in favor of the complaint standing and against the challenge." *Id.* citing *Dunlap v. McCarty*, 284 Ark. 5, 678 S.W.2d 361 (1984). Application of the discovery rule allowed the complaint to stand and the Court did not address other theories to toll the statute although it noted, in dicta, that the plaintiff argued for the first time on appeal that the limitations period in the CERCLA statute should apply. It is apparent from the Court's discussion that the argument was not made or considered that the trespass was continuing in nature and so the Court's decision in *Diamond Lakes* is instructive only to the extent it admonishes that where a reasonable theory for tolling the limitations is patent in the case, the court is to resolve the issue in favor of the plaintiff

■ However, where the trespass is not original (or a single event) and or the damage it causes is not complete and ascertainable at the completion of the act, the trespass is a continuing trespass. *See Spradley* (where construction of the "stringer" did not damage adjoining building but the occurrence was each event of flooding after heavy rains caused damage when the "stringer" dammed the flow of water). However, a factual distinction must be made between a trespass that is continuing because the injury continues unabated (*see Coleman* and Prosser and Keeton's term "continuing wrong", *supra*) and a trespass that is continuing because there are multiple occurrences. In Arkansas, for a trespass that is continuing by virtue of the fact that there are multiple occurrences, "... there may be as many successive recoveries as there are injuries." *See Holman.* But for a trespass that is continuing by virtue of the fact that the object remains, "...the invasion is continued by a failure to remove it [and] ...there is a continuing wrong so long as the offending object remains." *See Coleman (citing Prosser)* and *Kayfirst Corp. v. Washington Terminal Co.*, 813 F.Supp. 67 (D.D.C.1993) (defendant's retaining wall invaded plaintiff's adjoining property and Court found that the temporary nature of the wall stems from the fact it can be removed and as temporary trespass, the cause of action accrued the day the wall was placed on plaintiff property but the statute of limitation will not run until three years after the wall has been removed). In other words, where there is continuing trespass due to multiple occurrences (the flood or the tortious use of the tunnel to transport coal), the statute accrues to each injury and a claim is valid for the three years and that is why recovery has been limited where the statute of limitations is pled as a defense and will not allow recovery for damage resulting from occurrences three years older than the complaint itself. But where there is continuing trespass because of failure to remove the offending object(s), the limitation period accrues from the date of the injury (or injuries) but is tolled by the defendant's failure to remove it.

■ However, these fact patterns are not mutually exclusive and some cases may be characterized both as a continuing wrong as well as multiple occurrences. For example, Prosser's example of dumping of rubbish is a continuing trespass where the statute of limitation is tolled by continuing failure to remove it. In a case of multiple occurrences of dumping, each occurrence will be tolled by failure to remove. *See Murray v. Bath Iron Works Corporation,* 867 F.Supp. 33 (D.Maine 1994)(where three separate migrations of hazardous waste migrated onto plaintiff's property and court found that the presence of the waste constituted a continuing trespass and the statute of limitations was tolled because "..the tort would be continually occurring for statute of limitation purposes." at 48.)

■ At this juncture in the case, it is not necessary to nor does the Court have sufficient undisputed facts to conclude the exact nature of the trespass alleged. In this summary judgment stance, the Court merely finds that on the evidence before it, construing it and all reasonable inferences from that evidence in the light most favorable to the Sewells, the Court cannot say that a reasonable jury would not find under the facts of this case a continuing trespass, where the offending object is result of multiple occurrences and can be removed and so statute of limitation is tolled so long as the offending object(s) remains irrespective of the date of a given occurrence. Therefore summary judgment on the theory that the statute of limitation would bar any alleged trespass on the part of Texaco is improper.

## C. Effect of the statute of limitation on actions sounding in nuisance.

Because the Court finds, *infra,* that the Sewells may not maintain an action sounding in nuisance, the Court need not reach the issue of the effect of the statute of limitation on an action for nuisance and declines to do so at this time, while noting that the analysis for nuisance is in lockstep with the reasoning found in limitation issues in trespass.

## D. Effect of the statute of limitation on actions under ASWMA

Texaco argues that ASWMA does not expressly prescribe a limitation period and so any claim based on ASWMA is subject to the limitations statute codified at A.C.A. § 16–56–105(3) and providing a three year statute of limitations for "[a]ll actions founded on any contract or liability, expressed or implied." The Sewells respond there is no applicable limitation period and cite *Acxiom Corp. v. Leathers* for the proposition that where an Arkansas statute does not expressly include a limitations period, courts are not free to judicially impose one. 331 Ark. 205, 961 S.W.2d 735 (1998). They argue that because RCRA and ASWMA are similar, this Court should look to decisions analyzing RCRA and determining the only timing requirement is that waste be on the plaintiff's property at the time the suit is brought. The Sewells also argue that finding a three year statute of limitations on ASWMA claims would devastate the impact of the statute and thwart the intent of the Arkansas Legislature in its creation of the statute. Texaco replies that § 16–56–105(3) governs and there is no need to look to foreign decisions interpreting RCRA in order to decide the limitations period for ASWMA.

■ ASWMA does not prescribe a limitation period for actions, private or public. In *Acxiom,* the Arkansas Supreme Court stated that time limitations may only be asserted to the extent that they exist in statute and statutory schemes without an express statute of limitations clause will either have no applicable limitation period at all or fall under one of the limitation schemes found in Chapter 56 of Title 16 of

the Arkansas Code. 961 S.W.2d at 737. The parties have not cited nor has the Court's research found any case by the Arkansas Courts interpreting the limitation period for ASWMA. Therefore, this Court must construe whether or not the Arkansas Legislature intended that all actions pursued under ASWMA have a limitations bar of three years because the legislature construes ASWMA violations to be actions founded on a contract or a liability and because the Legislature believed a limitations period was necessary. Because it is clear that the expressed intent of ASWMA is to create a statutory scheme by which the State may "...regulate the collection and disposal of solid wastes ...[to] protect the public health...prevent ...pollution...spread of disease and the creation of nuisances [and] enhance the beauty and quality of the environment,"[as stated in § 8–6–202] and because the Act authorizes the Arkansas Department of Environmental Quality to order remedial measures when necessary to implement the intent of the Act [in § 8–6–204(b)(2) ] and because the Legislature chose to increase the reach of the Act by including a private right of action for those persons adversely affected by violations of the Act [§ 8–6–206], it is doubtful that the Legislature intended that a limitations period specifically limited to actions founded on contract or liability should operate to reach out and limit the reach of ASWMA. That doubt is buttressed by our finding, *infra*, that ASWMA has retroactive application. Therefore, this court finds that 16–56–105(3) is not applicable to ASWMA and judgment as a matter of law predicated upon that statue of limitations is improper.

E. *Claims under ASWMA must fail because ASWMA cannot be applied retroactively*

Texaco argues any claim predicated on ASWMA and concerning activities that un-

disputedly ceased in 1943 must fail as a matter of law because ASWMA did not exist until 1971 and may not be applied retroactively. Texaco submits that ASWMA is not retroactive because no express language provides for retroactive application creating a strong presumption against legislative intent for retroactive application; because express declarations in the emergency clause indicate legislative intent for prospective application; and because the statute is not remedial in nature.

The Sewells respond ASWMA is remedial in nature and retroactive application is appropriate when conduct that predates the Act remains a continuing harm. The Sewells cite a case from the Eastern District of Arkansas finding that ASWMA is remedial in nature. *State of Arkansas ex. rel. Bryant v. Dow Chemical Co.*, 981 F.Supp. 1170 (E.D.Ark.1997). Texaco seeks to distinguishes *Dow Chemical* as a state action while the instant case is a private action, and feels the *Dow* opinion relied on the fact that the State had other valid causes of action under other statutes for damage to natural resources within the state. Texaco also submits a Memorandum Opinion from the Circuit Court of Jefferson County, Arkansas holding that the Remedial Action Trust Fund Act may not be applied retroactively. A.C.A. § 8–7–501 *et.seq.*

▮▮▮ As recently repeated by the Arkansas Supreme Court, "[g]enerally, we observe a strict rule of statutory construction against retroactive operation and presume that the legislature intends for statutes and amendments to be applied prospectively. However, this rule does not ordinarily apply to procedural or remedial legislation." *Aka v. Jefferson Hospital Association, Inc.*, 344 Ark. 627, 642, 42 S.W.3d 508 (2001). Therefore the first question in the analysis is whether ASWMA is remedial in nature. Although

Texaco argues otherwise, this Court finds that by express terms in the Act, ASWMA is remedial in nature because it provides that the state may order "remedial measures ... to implement or effectuate the purposes and intent of this sub-chapter." § 8–6–204(b). Also, the General Assembly stated that "[t]his act shall be liberally construed so as to achieve remedial intent." A.C.A. 8–6–204 Acts 1991, No. 1057, § 1. [²]

 A finding that ASWMA is remedial in nature will not end the inquiry. The Arkansas Supreme Court mandates that legislation found to be remedial must be construed "...by giving appropriate regard to the spirit that promoted a statute's enactment, the mischief sought to be abolished, and the remedy proposed." 344 Ark. 627, 42 S.W.3d at 518 (citing *Bean v. Office of Child Support Enforcement*, 340 Ark. 286, 297, 9 S.W.3d 520 (2000)). And finally, retroactive application will be appropriate where the remedial statutes "do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligations." *Id.* at 518–19, citing *Bean*, 340 Ark. at 297, 9 S.W.3d 520 (other citation omitted). The Court finds that the Sewells claim against Texaco under the ASWMA is not an improper retroactive application because the spirit behind the enactment evinces authorization for remediation, the harm that the Sewells seek to correct is alleged improper dumping of solid waste, and the remedies provided do not create any new obligation not to leave the material on the land that did not arguably exists when Texaco originally leased the mineral rights in the 1920's.

## F. The Sewells' Complaint fails to state a claim for nuisance

Texaco argues that a claim for nuisance in Arkansas by its very definition will only lie where two separate tracts of land are involved and because this instant case involves only the actions of successive lessees on the lessor, nuisance, as a matter of law, will not lie. The Sewells respond that the owner of the surface estate has a right to be free from unreasonable interference with use and enjoyment even when that unreasonable interference is the result of the activities of a rightful lessee of the mineral estate of the same tract of land. They agree the Arkansas Supreme Court has repeatedly defined nuisance to rise from the conduct of one landowner which interferes with another landowner's use and enjoyment. However, the Sewells argue that Arkansas has never dealt with facts similar to the case and Arkansas law has never specifically limited nuisance to situations involving two separate tracts of land. Texaco reminds the Court that Arkansas has always defined nuisance to contemplate two separate tracts and that federal courts sitting in diversity must resolve the issue by attempting to predict how the Arkansas Court would rule.

 Texaco is correct that the Arkansas Supreme Court defines nuisance to contemplate separate parcels of property. That Court often defines nuisance as "conduct by one landowner which unreasonably interferes with the use and enjoyment of the lands of another and includes conduct on property which disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property." *See Southeast Ar-*

**2.** The opinion of the Federal District Court for the Eastern District of Arkansas in *State of Arkansas v. Dow Chemical Co.* (and cited by the Sewells) is only of limited value in the instant case because that Court specifically considered whether or not a claim for natural resource damage was an improper retroactive application of three Acts, including ASWMA. The Court found that a statutory claim for natural resource damage was available in one form or another since 1949 and therefore found the retroactive application permissible. The Court did not reach the issue of retroactivity on activities before that time.

*kansas Landfill, Inc. v. State,* 313 Ark. 669, 858 S.W.2d 665 (1993); *Milligan v. General Oil Co., Inc.,* 293 Ark. 401, 738 S.W.2d 404 (1987). Another definition is "an interference with the use and enjoyment of land and includes conduct on property disturbing the peaceful, quiet and undisturbed use and enjoyment of nearby property." *Arkansas Release Guidance Foundation v. Needler* 252 Ark. 194, 477 S.W.2d 821 (1972). The most cursory inquiry into the history of nuisance law will reveal that actions in nuisance were created in an effort to balance the firmly established notion that a landowner is allowed to use his land as he see fit. The law of nuisance has been fleshed out over time to temper many improper uses of land, but this Court doubts that the Arkansas Court, faced with this question, would choose to extend the definition of nuisance to encompass the facts in this instant case. The Court also notes here that the Sewells and persons similarly situated are not bereft of any remedy by our Ruling today. For example, trespass remains a viable claim in this case and that buttresses our holding that nuisance does not encompass the scenario before us today because trespass, as nuisance's chiral twin, contemplates interferences of the kind now before this Court. The Court grants judgment as a matter of law to Texaco on the issue of nuisance.

## CONCLUSION

For the reasons above, this Court finds that summary judgment is inappropriate on the theory that the activities complained of in this action, were authorized by contract. The Court also finds the statute of limitations will not bar this action in trespass or under the ASWMA. In addition, retroactive application of ASWMA is appropriate in this action. However, the Court finds that the plaintiff's fails to state a claim for nuisance as a matter of law because of the relationship of the parties as lessor and past lessee of the property at issue. An appropriate order of even date follows.

**IT IS SO ORDERED.**

### *ORDER*

IT IS ORDERED, for the reasons stated in the Memorandum Opinion of even date, that Defendant Texaco's Renewal Motion (doc. 66) should be and hereby is GRANTED and this Court has considered Texaco's Motion for Summary Judgment, its Brief in Support and its Statement of Undisputed Facts which were submitted against the First Amended and Substituted Complaint to have been submitted against the Plaintiff's Second Amended and Substituted Complaint.

IT IS FURTHER ORDERED AND ADJUDGED, for the reasons stated in the Memorandum Opinion of even date, that Separate Defendant Texaco's Motion for Summary Judgment (doc. 56) should be and hereby is DENIED in part and GRANTED in part. The Court denies Summary Judgment for Texaco based upon any rights pursuant to the storage contract, denies Summary Judgment based upon Texaco's assertion that the statute of limitations has run on the common law trespass claim or on the Arkansas Solid Waste Management Act (ASWMA), and denies Summary Judgment based upon it assertion that ASWMA may not be applied retroactively. However, the Court finds, as a matter of law, that the Sewells, as lessor, may not maintain an action for common law nuisance for activities of a lessee on the leased property. Therefore this Court grants summary judgment for Texaco on the nuisance claim.

**IT IS SO ORDERED.**